[L. A. No. 17637. In Bank.—January 22, 1941.]

WILLIAM H. NEBLETT, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

E. Walter Guthrie, William C. Ring and H. S. Dottenheim and E. W. Miller for Petitioner.

J. W. S. Butler, M. C. Sloss, J. Marion Wright and Claude Minard for Respondent.

THE COURT.—Petitioner instituted this proceeding for the purpose of reviewing an order of the Board of Gov-

ernors of the State Bar recommending that he be disbarred from the practice of law in this state.

On February 24, 1940, the petitioner was served with a notice to appear and show cause before a local committee of the respondent State Bar why he should not be disciplined for allegedly having given false testimony in a libel action commenced by him in the Superior Court of Los Angeles County. The alleged false testimony given by the petitioner before the jury in his libel action is set out at length in the notice to show cause and consumes some twelve typewritten pages thereof. At the hearings before the local committee petitioner admitted that he had so testified in the libel action but denied the charge of falsity. In fact, before the committee he testified to substantially the same effect by way of explanation of the transactions underlying both the libel action and the disciplinary proceeding. In other words, except in immaterial and minor details petitioner has not receded from the position taken by him as a witness in the libel . action.

Briefly stated, both the libel action, which is still pending, and the disciplinary proceeding, turn upon the truth of petitioner's statement or testimony as to the purpose for which certain sums of money, approximating $15,000, were paid to him in the latter part of 1936 and early 1937. It was the theory of the respondent State Bar, and it definitely so charged in the notice to show cause, that this money had been paid to the petitioner for the purpose of having him influence his then law partner, who was a United States Senator, to sponsor or support a deficiency appropriation measure in Congress which measure, if enacted, would supply the funds necessary to complete the new federal building then under construction in Los Angeles. In furtherance of its theory the respondent State Bar urged that the George A. Fuller Company of New York, one of the principal contractors engaged in the erection of the building, and The Newberry Electric Corporation of Los Angeles, a subcontractor for the installation of the electrical work, were both interested in seeing that sufficient moneys were appropriated to complete the building and that either or both had engaged or resorted to the services of one Carl Pustau, as an intermediary, to pay the money above mentioned to the petitioner for the purpose already referred to. A deficiency appropriation measure for

the completion of the building was passed by Congress in February, 1937.

In 1938, in an involuntary bankruptcy proceeding then pending against Pustau, there was offered in evidence a lengthy statement wherein he charged that the moneys theretofore paid by him to the petitioner were for the illegal purpose charged in the order to show cause herein. Apparently copies of this Pustau statement were released to the press and published. Whether the statement was intended to embarrass and thereby defeat petitioner's then law partner for reelection as United States Senator, is purely speculative and presently immaterial, though such is asserted in petitioner's briefs to have been its purpose.

After its publication and in February, 1938, the petitioner herein sued Pustau for damages for libel, alleging his statement to be false. Several other persons were also named as defendants on the allegation that they had induced or procured Pustau to make the charge. As already indicated, upon the trial of the libel action petitioner admittedly testified as charged in the order to show cause in this proceeding. Then, and ever since, he has consistently claimed and testified that the moneys paid to him by Pustau were not for the purpose stated by the latter but, on the contrary, were paid to him pursuant to an agreement whereby petitioner for a fee, reflected in part by the Pustau payments, was to undertake over a year period to procure electrical work or business for The Newberry Electric Corporation, represented by Pustau, with particular view to an effort on petitioner's part to procure for such electrical company a contract for the construction of a power line from Boulder Dam into Los Angeles for the Southern California Edison Company. The president of the latter company was a personal friend of the petitioner which fact it was assertedly assumed would be of assistance to the petitioner in his negotiations in the particular mentioned. The record herein discloses that petitioner exerted some effort toward the accomplishment of this objective, though the parties hereto differ as to the time when such service was rendered and the result thereof. As stated, in the libel action and ever since, the foregoing substantially has been the petitioner's explanation of his receipt of the money from Pustau. Obviously, this explanation, if accepted or true, discloses nothing of a disciplinary character.

At the trial of the libel action petitioner, as plaintiff, after offering on the witness stand his explanation of the Pustau payments to him, as against Pustau's prior and allegedly libelous charge with respect thereto, was nonsuited as to certain of the defendants but procured a judgment of $70,000 against other defendants, including Pustau. A new trial was thereafter granted to the latter group of defendants the prosecution of which is assertedly awaiting the determination of petitioner's appeal from the judgment of nonsuit in favor of some of the defendants. In short, the libel action in which it is here charged that petitioner, as witness and plaintiff, had perjured himself is still pending and undetermined in a court possessing the jurisdiction essential to a proper determination of the issues there involved, which necessarily include any question as to the truthfulness of testimony therein given by the petitioner, plaintiff in that action, with respect to the purpose or purposes for which he admittedly received the money from Pustau. For, if petitioner's testimony therein be assumed to be true, obviously he was maligned by Pustau's statement to the contrary, whereas if the latter's statement be accepted petitioner would have no just cause for complaint in the libel action.

■■ Under the circumstances, and for other reasons hereinafter to be mentioned, we are of the view that the ends of justice will best be served by a dismissal of this disciplinary proceeding without prejudice, to await the determination of the issues in the pending libel action out of which, as stated, the present proceeding arose. In *Golden* v. *State Bar*, 213 Cal. 237, 249, 250 [2 Pac. (2d) 325], wherein there was a connection or tie-in between pending civil litigation and the disciplinary proceeding there involved, we dismissed the latter without prejudice to await disposition of the former. We are mindful that determination of the libel action is not necessarily indispensable to the institution or prosecution of a disciplinary proceeding tracing its origin thereto. But we are equally mindful that the right to practice law is a valuable one which should not be taken away or cancelled under circumstances that have even the slightest tendency to suggest any possible unfairness or disadvantage therein to the attorney whose right to remain in his profession is challenged. Some of the principal witnesses against the petitioner in this disciplinary proceeding are defendants in the pending libel action to which this proceeding traces its

origin. Without any desire on our part to impugn the honesty of these witnesses, we are of the firm conviction that they should not be confronted with even the slightest temptation to color their testimony in this proceeding, consciously or unconsciously, in a way that later may prove to be beneficial to them as defendants in the petitioner's pending libel suit against them. Under the peculiar circumstances here present, it is neither fair to the witnesses nor to the petitioner that such a situation be tolerated. Moreover, any present disposition of this disciplinary proceeding on the merits, no matter how guarded, or what the result, could serve only to prejudge, if not determine, the pending libel action. It is not our inclination so to do. If, as the respondent State Bar contends, petitioner actually falsified his testimony on the first trial of the libel suit, on which point we express no opinion, that fact, if it be a fact, may be proved equally as well at the conclusion of that litigation and then be made the basis for disciplinary action free of the obstacles which now rear their heads upon this proceeding.

Our conclusion to dismiss this proceeding without prejudice is fortified by other matters worthy of consideration. There can be no doubt but that in the inception of this proceeding the respondent State Bar relied heavily upon the statements and testimony of Pustau to establish that he had paid the money to petitioner for the improper and illegal purpose charged in the order to show cause. The findings so declare. Unquestionably Pustau at the inception of these proceedings was to be the principal witness against petitioner. His testimony in this proceeding covers approximately 250 pages of the transcript. He did not, however, prove to be a good witness. Concededly, he is now a convicted perjurer. (*People v. Pustau,* 39 Cal. App. (2d) 407 [103 Pac. (2d) 224)]. Because of this, the committee later and wisely abandoned him and its findings frankly exclude his testimony from all consideration. As a result, the local committee expressly refused to find, as charged in the order to show cause, that the money paid by Pustau to petitioner was for the purpose of having the latter influence his then law partner, as a United States Senator, to assist in the congressional appropriation of deficiency funds with which to complete the Los Angeles federal building. The Board of Governors adopted the findings of the committee and consequently has likewise refused to find upon this issue. It is difficult to perceive how a con-

trary finding could have been made under the circumstances. In the absence of the testimony of the discredited and rejected witness Pustau, the transcript is destitute of direct evidence tending to establish that the money was received by petitioner for the purpose charged in the order to show cause. Other witnesses called by the respondent State Bar, whether friendly or unfriendly to petitioner, denied having paid or having directed payment to petitioner for such purpose. In fact, the president of The Newberry Electric Corporation, a witness none too friendly toward petitioner, testified that there was "no need for anything of the kind; perfectly absurd to even think of it."

We advance the foregoing without any thought of presently considering or determining the merits of the charge against petitioner but merely to show that the state of the record now before us is such as to support our conclusion that any disciplinary action should await determination of the libel suit. The respondent State Bar being thus precluded by the turn of events from finding that the money was paid by Pustau to petitioner for the purpose specifically alleged in the order to show cause, nevertheless went on to find that petitioner had falsified when he testified in the libel suit to the effect that the money had been paid to him for his services in connection with attempting to procure a contract for The Newberry Electric Corporation to build a power line from Boulder Dam to Los Angeles for the Southern California Edison Company. Assuming, without deciding, that such asserted falsification is within the charge as defined in the order to show cause, as urged by the respondent State Bar, under the express findings of the committee as adopted by the Board of Governors, it is dependent and grounded upon certain conflicts between petitioner's testimony in the libel action (here substantially reiterated by him) and the testimony of certain witnesses, other than Pustau, called by the respondent State Bar in this proceeding, augmented by certain inferences allegedly deducible from such other evidence. In fact, the committee in its findings (later adopted by the Board) declared that "In finally apprising the Board of this Committee's feelings in regard to the credibility of the witnesses, in fairness to the [petitioner] it must be stated that were the Committee obliged to judge this matter solely between the Committee's opinion of the veracity of the [petitioner] and the veracity of the majority of the witnesses upon

whom the State Bar was forced to rely, the Committee would indeed have found that task most difficult. We have been here aided, however, by the exhibits, the establishment of certain definite points of time in relation to the happening of certain matters, and have been further aided by the inferences properly deducible from satisfactory evidence and the Committee's own knowledge of the general and reasonable actions of persons under given conditions.''

We do not deny that certain discrepancies exist between parts of petitioner's testimony in the libel suit, explaining the reason and basis for his receipt of the money from Pustau, and parts of the testimony of certain witnesses called herein by the respondent State Bar. However, we do not hesitate to state that some of these discrepancies are not of great consequence and conceivably may be traceable to honest but varying recollections of the same incident by different minds. Nor do we deny the evidentiary value of inferences drawn from evidence. But, in view of the pendency of the libel action out of which this proceeding arose and in which the purpose underlying the Pustau payments to petitioner is equally material, and in the absence from the record now before us of credible direct evidence contradicting petitioner's explanation of the purpose underlying said payments, we are not now inclined to weigh the discrepancies and inferences mentioned and to rule either that they are or are not sufficiently substantial to warrant petitioner's disbarment. Because of the unusual circumstances involved, as indicated above, that may best be done at the more propitious time already mentioned. Particularly does this course appear appropriate when it is further noted that so far as we are aware, or have been informed, this is the first time in the petitioner's twenty-six years of professional activity, twenty-two of which have transpired in this state, that he has been recommended for discipline.

Moreover, our conclusion will serve to avoid the necessity of passing upon petitioner's contention that the recommendation of disbarment made by the Board of Governors is null and void because approved and voted only by the necessary minimum of eight members, one of whom assertedly was disqualified and not entitled to participate therein because of his prior representation as counsel of one of the defendants in the petitioner's libel action. Such representation was in the very libel action out of which this disciplinary proceed-

ing arose. It is true that the particular defendant was early relieved of liability in that action on an order of dismissal and his representation by the challenged member of the Board of Governors was but nominal. It is also true that in response to petitioner's motion to dismiss this proceeding because of said member's alleged disqualification and the asserted resulting deficient vote of qualified members of the Board of Governors, an affidavit has been filed herein by the challenged member in which he avers that at the time of his participation in the deliberations and voting of the board in this disciplinary proceeding he had "completely forgotten" his prior and nominal representation of one of the minor defendants in the libel action. He likewise disclaimed all "feeling favorable or unfavorable" toward petitioner by reason thereof. We do not question the sincerity or honesty of purpose of the particular member. Nor do we find it necessary to here pass upon either the timeliness or the merits of the challenge directed at him, for obviously our conclusion to dismiss this proceeding without prejudice for reasons already mentioned will effectively serve to remove the circumstance which petitioner asserts has resulted in the recommendation of his disbarment by a vote of an insufficient number of qualified members of the Board of Governors. This latter circumstance is but another factor tending to establish the reasonableness of our disposition of this proceeding in a manner to eliminate all vestige of claimed unfairness.

In conclusion, it may also be pointed out that such course will likewise serve to afford petitioner the requested opportunity to further challenge the testimony of the president of The Newberry Electric Corporation. The respondent State Bar denied a similar request upon the ground that it already had made its recommendation to this court and had lost jurisdiction of the proceeding. It appears from the findings herein that the respondent State Bar has placed much reliance upon the testimony of said witness particularly in so far as it differs from petitioner's explanation of his dealings with that company. In a supplemental affidavit filed in support of his motion to dismiss this proceeding upon the ground last above discussed, the petitioner avers that in the argument before the Board of Governors the State Bar examiner had cast some aspersion upon or had questioned the accuracy of at least a portion of the testimony of the designated witness, who had been called by the respondent. We do not find in the record

now before us any denial by the State Bar of such challenge of its own witness and, as stated, our indicated disposal of this proceeding will not foreclose the petitioner from further challenging the witness' testimony in any particular desired.

Therefore, in view of the pendency of the libel action out of which this proceeding arose, and in view of the unsatisfactory state of the record herein in the respects mentioned, we are of the opinion that the ends of justice will best be served and the valuable right to practice law will more effectively be guarded by a dismissal of this proceeding without prejudice, to await whatever proceedings the respondent State Bar deems appropriate upon the later determination of the libel litigation.

It is so ordered.

Edmonds, J., and Houser, J., did not participate in the consideration or decision of this matter.

A petition for a rehearing and for modification was denied February 20, 1941. Edmonds, J., and Houser, J., did not participate.