[L. A. No. 18083.   In Bank.   Mar. 3, 1942.]

F. L. RICHARDSON, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

J. A. Donelley for Petitioner.

W. Eugene Craven and A. W. Brouillet for Respondent.

THE COURT.—This is a proceeding to review a recommendation of the Board of Governors of the State Bar that petitioner be disbarred from the practice of the law.

Petitioner was admitted to practice in this state in 1913 after having practiced since 1901 in Kansas. On December 23, 1940, a notice, containing four counts, was issued by the respondent State Bar directing petitioner to show cause why he should not be disciplined for certain acts allegedly involving moral turpitude, dishonesty and violation of his oath and duties as an attorney. A local administrative committee conducted several hearings, made findings adverse to petitioner and recommended discipline, leaving the extent thereof for the determination of the Board of Governors. The board thereafter adopted the committee's findings and has recommended that petitioner be disbarred.

■ The petitioner, as charged, was found to have prepared and presented to a court for approval false and fraudulent accounts in connection with a guardianship and estate matter; to have solicited employment from the heirs of the deceased person without disclosing to them his existing and former connection with the estate of the decedent; to have filed a false petition and affidavit to determine heirship in the estate in which he had become beneficially interested; and to have represented adverse interests in litigation arising out of said guardianship and estate matters.

The evidence discloses that from 1919 to 1922 petitioner acted as attorney of record for one Chandler who was guardian of the estate of Anna Baxter, an incompetent. In the latter year the incompetent died and from then until 1935 petitioner continued to act as the attorney for Chandler who, in the meantime, had been appointed administrator of the estate of the deceased incompetent. In 1935 the administrator died and petitioner had himself appointed administrator of the deceased incompetent's estate and had one Smith appointed administrator of Chandler's estate. Petitioner's conduct as attorney throughout this entire period resulted in the charges here under review.

In the course of the guardianship proceeding petitioner, as attorney, had prepared and filed on behalf of Chandler, the guardian, three accounts, an inventory and a supplemental inventory. Each account was heard in court and approved. In the interim between the second and final accounts certain

additional assets consisting of real property appraised at $60,000 and certificates of deposit amounting to $23,122.25 were received by the guardian. These were scheduled by the guardian in the supplemental inventory. No mention of these certificates of deposit was made in the final account, however, except that about $8,000 received therefrom were accounted for without designating the source. The certificates of deposit thus omitted from the final account of the guardian amounted to approximately $15,000. Petitioner testified in this proceeding that when he prepared and filed the final account in the guardianship proceeding, the incompetent having died in the interim, he knew that these assets were not included but by way of explanation urged that the final account was only intended to cover cash in the estate and not other assets. Aside from the unusualness of such a final account, it must be noted that the order settling the account, also prepared by petitioner, declared that the account contained "a true and correct statement of all funds *and property* in [the guardian's] hands belonging to said estate. . . ." At about this same time (June, 1922), the petitioner also prepared and had Chandler sign, as administrator of the deceased incompetent's estate, a receipt to himself (Chandler) as former guardian acknowledging receipt of $31,295.25 "in money, property and securities belonging to said estate, the same being *all of the property* of said estate as shown by the Final Account and Report of said Guardian herein."

In this disciplinary proceeding petitioner testified that the $31,295.25 so acknowledged in the receipt, represented "all cash" in Chandler's hands first as guardian, and then as administrator. Yet, when petitioner later in the same month (June, 1922) as attorney for Chandler, prepared and filed an inventory in the deceased incompetent's estate, there was scheduled only $14,672 as cash on hand—some $16,623.25 less than the amount actually on hand. When questioned about this cash discrepancy petitioner admitted that he knew when he prepared the inventory in the estate for Chandler as administrator that there was a cash shortage of between $15,000 and $17,000 but by way of explanation testified that "I could only inventory what he would give me. It didn't make any difference because he had it, the other inventory showed he had it." Petitioner also admitted that he had never called the probate court's attention to the fact that

the inventory there filed did not list all the cash he believed should be in the estate. As attempted justification for his silence, he further testified, ''I would have been accused of betraying the confidence of my client if I had'' disclosed the shortage. Thus, in an admitted effort to conceal the defalcations of Chandler, petitioner saw no vice in deliberately misleading the probate court to the detriment of the heirs.

In 1925, petitioner prepared and filed on behalf of Chandler a final account and petition for distribution of the estate which likewise was deficient in the amount above stated. As to the final account so prepared and filed by him, petitioner testified in this proceeding that ''of course I knew it wasn't correct. . . . I knew there was a discrepancy there of about seventeen thousand dollars.'' He also admitted that he did not call the discrepancy to anyone's attention. Knowing of its falsity, petitioner may not justify the preparation of such an account upon the ground ''That is all Chandler would give me. That is all the kind of an account he would make. I didn't have any position in the matter.'' Such an explanation is indicative of a lack of understanding of his duties and obligations as an attorney and officer of the court. Petitioner thereafter sought and procured a reduction of the administrator's bond from $30,000 to $2,000 upon the representation that all the estate funds had been disbursed except the sum of $1,278.03—knowing at the time that some $17,000 had not been accounted for by Chandler.

Ten years then elapsed with very little activity occurring in the estate. In 1935, however, Chandler, the administrator, died and petitioner had himself appointed administrator in 1937. In July, 1937, after his appointment, petitioner wrote two letters to a Mrs. Marshall, one of the persons entitled to inherit a portion of the Baxter estate of which petitioner was then administrator, in which he informed her that there was an estate in which she might have an interest and that he possibly might get her some money therefrom. He enclosed in the second letter a form of fifty percent contingent fee contract. In these letters petitioner did not disclose the estate involved nor that he had been appointed administrator thereof. By his own admission petitioner at the time knew that Mrs. Marshall had an interest in the Baxter estate. This interest arose by reason of Mrs. Marshall being a legatee of one Thomas Hale, deceased, a brother and heir at law of the decedent Baxter. It was this solicitation of Mrs. Marshall,

testified to by her on deposition and substantially admitted by petitioner here, that constitutes the basis of the second charge against petitioner. While petitioner denies that he "solicited" employment by Mrs. Marshall the facts speak for themselves.

At the time petitioner had so solicited employment from Mrs. Marshall, he already had obtained a fifty percent contingent fee contract with one J. W. Hale, another heir of the Baxter estate, who also was a brother of said decedent. As attorney for J. W. Hale petitioner on September 7, 1937, filed in the Baxter estate a petition to determine heirship. In the petition and supporting affidavit prepared by petitioner it was alleged that Thomas Hale, one of the heirs of Anna Baxter, and through whom Mrs. Marshall claimed as legatee, had died intestate and that his only surviving heir was J. W. Hale, petitioner's client and that said client was therefore entitled to all of the Baxter estate. At the time petitioner so prepared these documents he knew that Thomas Hale. had died testate and that one Henning had been appointed administrator of his estate with the will annexed, Mrs. Marshall, as indicated above, being one of his legatees. As a result of this petition being prepared and filed by petitioner, Joseph Hale was decreed to be the sole heir of the decedent Baxter and entitled to her entire estate. At a later date this order or decree was set aside after Attorney Henning had discovered the true state of affairs. It is the preparation and filing of this false petition and supporting affidavit to determine heirship that underlies the third charge here made against petitioner. In the light of his entire conduct in the handling of the Baxter guardianship and estate proceedings and of his earlier preparation and filing of false inventories and accounts therein we cannot accept petitioner's explanation that the petition and affidavit in the heirship proceeding inadvertently employed the word "intestate" rather than "testate." The whole structure points to the knowing and deliberate false use of the word intestate in order to benefit petitioner's client with whom he had a contingent fee contract, to the wrongful exclusion of other heirs.

The fourth charge against petitioner involves a further development of the facts discussed in connection with the first count. As above stated, Chandler the defaulting administrator of the Baxter estate had died in 1935 and petitioner there-

after had himself appointed administrator of that estate and had Smith appointed administrator of Chandler's estate. While serving as administrator of the Baxter estate petitioner also admittedly represented and acted as attorney for Smith as administrator of the Chandler estate. While serving in these dual and clearly adverse capacities petitioner in 1940 prepared a claim for $17,237.08 (representing the shortage in Chandler's account as administrator of the Baxter estate), which claim was presented to and allowed by Smith as administrator of the Chandler estate. Smith was entirely unfamiliar with the estate and did as directed by petitioner. The claim was later allowed against the estate by the probate court and petitioner then brought an action, as administrator of the Baxter estate, against the surety on Chandler's bond to recover the amount of the claim. The whole purpose of petitioner was to collect the shortage from the surety company that had written the administrator's bond for Chandler. While admittedly aware of the Chandler defalcation since 1922 petitioner neither as attorney nor as administrator made any disclosure of or attempt to collect such shortage until 1940 and then only after he had obtained a fifty percent contingent fee contract with one of the heirs of the Baxter estate.

The evidence against petitioner warrants his disbarment. His effort to explain away damaging portions thereof will not stand the test of scrutiny. To accept such explanation would require a disregard of realities. The fact that the bonding company, through its attorney, upon disclosure of the full facts may have interested itself in this disciplinary proceeding is not fatal and the pendency of the action against that company does not bring this proceeding within the holding in *Neblett* v. *State Bar*, 17 Cal. (2d) 77 [109 Pac. (2d) 340], as urged by petitioner. The two proceedings are distinguishable. Here, petitioner's own testimony and admissions, with the inferences deducible therefrom, are alone sufficient to warrant his discipline. No witness here appearing is a defendant in the pending civil litigation and the witnesses who did appear in this proceeding are persons who would benefit by petitioner's successful prosecution of the civil litigation. The record discloses a continuous course of misrepresentation and misconduct on the part of petitioner extending over a period in excess of fifteen years. His repeated and deliberate misrepresentation of facts to the court, his failure to disclose facts

to the heirs of the Baxter estate, his misuse of information contrary to their interests and his representation of conflicting and adverse interests adequately warrant the recommended punishment.

It is therefore ordered that petitioner be disbarred from the practice of the law effective thirty days from the filing of this opinion.