[S. F. Nos. 22440, 22480.   In Bank.   May 15, 1967.]

ALAN GROVE, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

(Consolidated Cases.)

Alan Grove, in pro. per., Benjamin Dreyfus and Garry, Dreyfus & McTernan for Petitioner.

F. LaMar Forshee and Herbert M. Rosenthal for Respondent.

THE COURT—In two proceedings consolidated for hearing, the State Bar of California recommended, respectively, disbarment and suspension of Alan Grove, member of the State Bar. Since we agree that petitioner should be disbarred, we consider only the former complaint, and dismiss the suspension proceeding, S.F. 22480.

In its order to show cause, which petitioner admitted receiving, the State Bar alleged 15 counts of professional misconduct including failure to file or defend suits or otherwise perform services for clients, retaining fees for services not performed, failure to report money collected for clients, false representation, and purposeful evasion of communication with clients. Petitioner failed to appear at the local administrative committee hearing, and he offered no testimony before the disciplinary board. He made a "special appearance" before the board, contesting its jurisdiction. Before this court he contended that the board lacked "*in personam jurisdiction*" because of improper service of notice of its hearings.

Because his argument is completely unsubstantiated by the record, and since counsel appears to have conceded the board's jurisdiction in his supplementary brief, we hold that the proceedings before the committee and the board were proper. The board dismissed five of the fifteen counts; we accept the board's findings on the remaining ten, and we set forth the basic facts there involved.

1. In September 1963 petitioner was employed as attorney for Josephine Fischer. He told her that he would file suit for her in a personal injury matter. He failed to file the suit and the client's claim became barred by statute of limitations.

Moreover, petitioner did not respond to a great many telephone calls from her.

2. In September 1963 petitioner was retained by Mr. and Mrs. John D. Nicholson to represent them in an adoption proceeding. He told them and the court that he would prepare two necessary documents. Upon his failure to do so, the court prepared the documents.

3. Petitioner was employed in April 1961 by Mr. and Mrs. Peter V. Lepore to represent them in a personal injury claim. He told them that they should not worry about their medical bills, but that they would be met by their insurance company. When his clients were served the summons and complaint for payment of the bills, petitioner agreed to handle the action. He failed to contest the action and, pursuant to a default judgment, Mr. Lepore's earnings were garnisheed. He did not respond to numerous telephone calls from his clients.

4. In May 1963, while attorney for Willin Land Sales Co., petitioner had custody of corporate books, minutes, and papers in connection with a lawsuit. Despite telephone calls and letters, petitioner willfully failed to return the records to his client.

5. Petitioner was employed in August 1960 by Mrs. Eleanor B. Stevens as attorney for the estate of her father. As a result of his failure to perform the services for which he was engaged, including the preparation of an accounting and appearance in court for his client, the administratrix, Mrs. Stevens, suffered revocation of her letters of administration and a judgment for the bonding company for unpaid premiums, costs, and counsel fees.

6. Petitioner failed to appear in court for a hearing of a divorce action which he had filed for his client, Mrs. Doris M. Borneman, in September 1964. He failed to respond to numerous telephone calls from his client.

7. In November 1962 petitioner was engaged as attorney by Ronald W. Fahlgren and agreed to file a complaint for damages to a motor vehicle. He failed to file the complaint. When his client was subsequently sued for damages arising out of the same accident, petitioner represented that he would file an answer. After he failed to file the answer and after he knew that a default judgment had been entered against his client, he advised his client not to worry about the judgment because he would contact the collection company. He failed to contact the collection company, and failed to respond to between 50 and 100 telephone calls by his client.

8. In August 1963 petitioner represented Dona Cain in a divorce action, and received for delivery to his client numerous trustee checks from defendant's attorney. He retained many of the checks in his possession for more than a year. Several became outdated and non-negotiable, and his client was forced to seek reissuance by the maker. Petitioner did not respond to any of the numerous telephone calls placed to him by his client.

9. Petitioner accepted $50 as partial payment of his fee for representing Ruby Falcon in a domestic relations matter, but failed to perform any services for her, and failed to respond to any of the telephone calls from her or messages left by her at his office.

10. Petitioner failed to perform the services for which he was engaged and paid $133 by C. F. Denning in November 1963. Denning was defendant in an action for a real estate broker's commission. Petitioner failed to appear for his client at the scheduled trial, and his client proceeded to trial without counsel and suffered an adverse judgment. He subsequently failed to return to his client the papers entrusted to him, or to respond to numerous telephone calls and personal visits by his client.

Petitioner's record, in addition to the two proceedings before us, is not without blemish. In December 1962 this court suspended him for nonpayment of dues, reinstating him after eight days. In September 1965 this court reprimanded him for misleading a court as to the appearance of an opposing attorney. (*Grove* v. *State Bar* (1965) 63 Cal.2d 312 [46 Cal. Rptr. 513, 405 P.2d 553].)

In view of the number of offenses of which the board found petitioner guilty, and considering his previous record, we are compelled to conclude that he engaged in an habitual course of conduct toward his clients characterized by willful violation of his oath as an attorney. Although a few of his offenses, standing alone, might be described as merely negligent, or grossly negligent, his persistence in refusing to perform services for which he was engaged, and for which he accepted fees, can only be regarded as deliberate and willful. Petitioner habitually failed to file necessary documents for his clients, failed to appear at scheduled hearings, misled his clients as to the status of their affairs, and avoided communications by telephone, in writing, and in person.

Habitual disregard by an attorney of the interests of clients is ground for disbarment under Business and Profes-

sions Code sections 6103 and 6106. Even when such neglect is grossly negligent or careless, rather than willful and dishonest, it is an act of moral turpitude and professional misconduct, justifying disbarment. (*Stephens* v. *State Bar* (1942) 19 Cal.2d 580 [122 P.2d 549]; *Herron* v. *State Bar* (1944) 24 Cal.2d 53 [147 P.2d 543].) This court has held that disbarment was the appropriate sanction for a continuous course of conduct over 15 years of misrepresentation and misconduct involving false accounting in a guardianship matter, false statement of inventory for guardian-administrator, and the filing of a false heirship petition. (*Richardson* v. *State Bar* (1942) 19 Cal.2d 707 [122 P.2d 889].) Similarly, failure to protect a client's interest in a quiet title action and failure to complete specific arrangements for prosecution of an appeal, plus careless but not willful disregard of a suspension order justified disbarment in *Herron* v. *State Bar, supra,* 24 Cal.2d 53. Finally, in *Stephens* v. *State Bar, supra,* 19 Cal.2d 580, we ordered disbarment of an attorney for two acts of carelessness and gross negligence in failure to prosecute actions for which he was employed.

Petitioner's neglect of the interests of his clients was exceeded, perhaps, only by his neglect of his own. Until the day before oral argument, he failed to retain counsel, appear at hearings, or meet any of his obligations under the proceedings against him. He persisted in clinging to his transparent excuses for his neglect. At oral argument, however, petitioner's counsel sought to explain petitioner's conduct as based upon psychological causes. We extended leave to counsel to have petitioner examined by a psychiatrist and to bring to our attention any relevant facts thus disclosed.

As grounds in mitigation of the punishment, petitioner presented the affidavit of his psychiatrist stating that he is suffering from "a compulsive Neurosis, with roots going back many years." While we do not feel that it would be in petitioner's best interests to state his psychiatric report in detail, we note that the psychiatrist found "no evidence of a basic psychosis but he does show neurotic features which are in need of intensive psychiatric attention. . . . His condition can be summed up as one of extreme immaturity, impulsiveness, impairment of capacity to form sound judgments and lack of ability to continue on a project to a timely conclusion." Petitioner recognizes his need for psychotherapy and has placed himself under the care of a psychiatrist. He also recognizes his present inability satisfactorily to perform the

functions of an attorney, and urges that we order that he be suspended until he can demonstrate that he has overcome his mental difficulties.

While we sympathize with petitioner's psychological difficulties and commend him on his frankness in recognizing his problems, we cannot find that the psychiatric report states any grounds for excusing him from observation of at least the minimum standards of professional conduct. We realize that in many cases psychoneurotic problems may underlie professional misconduct and moral turpitude. In this area our duty lies in the assurance that the public will be protected in the performance of the high duties of the attorney rather than in an analysis of the reasons for his delinquency. Our primary concern must be the fulfillment of proper professional standards, whatever the unfortunate cause, emotional or otherwise, for the attorney's failure to do so.

Our holding obviously will not prevent petitioner from applying for readmission to the State Bar upon a proper showing. It is our duty, however, to order that the petitioner be disbarred from the practice of law in this state and that his name be stricken from the roll of attorneys, effective 30 days after the filing of this decision.