[L.A. No. 30549. July 1, 1976.]

In re PATRICK E. DUGGAN on Disbarment.

[L.A. No. 30473. July 1, 1976.]

PATRICK E. DUGGAN, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

418

**COUNSEL**

Selwyn & Capalbo, Herbert E. Selwyn, Friedman & Blake and Michael Friedman for Petitioner.

Herbert M. Rosenthal, Ronald W. Stovitz and Garret H. Elmore for Respondent.

**OPINION**

**THE COURT.**—These are consolidated proceedings to review recommendations of the Disciplinary Board of the State Bar (Board) in L.A. No. 30549 that petitioner be disbarred because of his conviction of a crime involving moral turpitude (Bus. & Prof. Code, §§ 6101, 6102; Cal. Rules of Court, rule 951) and in L.A. No. 30473 that he be suspended from the practice of law for 18 months.

Petitioner was admitted to practice in 1955; there have been two prior concluded disciplinary proceedings against him.[1] On March 6, 1974, he

---

[1] In the first proceeding numbered and entitled Orange 87—In the Matter of Patrick E. Duggan (Eugene Leviton, Esq., Pablo M. Perez, and Frederick Warren Seaton, complaining witnesses) it was found that from September 1966 until about June 1, 1967, petitioner employed Michael Garza Pena and provided him with a card which read: "Radio Car: 547-6261 Car No. 3460 Patrick E. Duggan and Associates Attorneys at Law 1505 East 17th Street Santa Ana, California Telephone 547-9129 Evenings & Weekends 543-5552." By the use of this card petitioner permitted Pena to represent to petitioner's clients and to prospective clients that Pena was licensed to practice law in California when in fact he was not so licensed and petitioner knew he was not so licensed. In addition, by using and furnishing these cards to third parties, petitioner falsely represented that there were other attorneys associated with him in his office when in fact petitioner had no associates licensed to practice law in California. On March 13, 1970, the Board privately reproved petitioner.

In the second proceeding Orange 92 (Bar Misc. 3401)—In the Matter of Patrick E. Duggan (Mrs. Ralph King & Alvin H. Quesnel, complaining witnesses; State Bar investigation) the Board found that in July 1967 petitioner prepared and filed a

pleaded guilty to, and was convicted of contributing to the delinquency of a minor (Pen. Code, § 272). For this offense, imposition of sentence was suspended and petitioner was granted probation for five years under certain conditions.[2]

The proceeding in L.A. No. 30549 was initiated by the transmission to this court of certified copies of papers evidencing petitioner's conviction. (Bus. & Prof. Code, §§ 6101-6102.) On May 22, 1974, we issued an order to show cause reciting that "[t]he judgment of conviction of violating Penal Code section 272, an offense involving moral turpitude, entered against Patrick E. Duggan" had become final and giving petitioner 20 days within which to respond. In addition, we ordered petitioner

bankruptcy petition for a client Mrs. King. Petitioner failed to advise Mrs. King whether certain fees owing to petitioner by the client were listed in the bankruptcy petition and whether they would be discharged. In fact, the debt for fees was not included, though on July 25, 1968, petitioner told Mrs. King that the debt had been included in the bankruptcy and was discharged. In September 1967 petitioner obtained an installment promissory note from Mrs. King and her husband for $1,843.50, the amount carried on petitioner's ledger sheet for Mrs. King as of August 2, 1967. In August 1968 petitioner advised Mrs. King that unless payments were made on the note, petitioner would file suit and garnish the wages of Mrs. King and her husband. Thereafter, petitioner sent Mrs. King a document entitled "Notice of Garnishment" which purported to be a process of the Municipal Court of the Santa Ana-Orange Judicial District in an action entitled and numbered "Patrick E. Duggan, Plaintiff v. Arlene King, Defendant, No. 2236M." In fact, no such action existed and this document constituted a false representation to Mrs. King which was made by petitioner for the purpose of deceiving Mrs. King and inducing her to pay money to petitioner.

In a second matter involved in the same disciplinary proceeding, petitioner caused a similar document entitled "Notice of Attachment of Assets" to be sent to a client, Mr. Quesnel, who had not responded to a bill for fees. This document purported to be a judicial process in an action which had not in fact been filed.

The Board found that petitioner had violated his oath and duties as an attorney (Bus. & Prof. Code, §§ 6067, 6068, 6103) and had committed acts involving moral turpitude, dishonesty and corruption (Bus. & Prof. Code, § 6106). Upon recommendation of the Board, on July 7, 1971, this court ordered petitioner suspended from the practice of law for a period of six months.

[2]Petitioner's conditions of probation included inter alia, that he not practice law with or without remuneration, solicit any legal business or represent himself to anyone as an attorney until the State Bar of California is convinced that he can practice law without danger to his clients or to the general public and regularly reinstate him as an active member of the bar; that he register pursuant to Penal Code section 290; that he not be in the presence of minor children under the age of 18 years except in the presence of responsible adults over 21 years of age unless approved by the Probation Officer; that he cooperate fully with the probation officer in a plan of psychiatric treatment; that he seek and cooperate in immediate admittance to the psychiatric unit of the Long Beach Veterans Hospital; that he cooperate in all reasonable medical and psychiatric treatment as prescribed by the treating doctors; and that he not leave the hospital without the permission and recommendation of the treating doctor as no longer needing inpatient treatment. There is no indication in the record that petitioner has failed to comply with the conditions of his probation.

suspended from the practice of law in this state pending disposition of this proceeding. In his handwritten reply, petitioner requested a hearing so as to present evidence of "mitigating circumstances having an important bearing on the nature of the discipline [to be] imposed, if any." Accordingly, on July 3, 1974, we referred this matter to the State Bar for hearing, report and recommendation as to the nature and extent of discipline to be imposed. (Cal. Rules of Court, rule 951 (c).)

Two hearings were conducted by a local administrative committee. Prior thereto, petitioner personally and by his counsel stipulated in writing that his conduct and actions leading to his conviction involved moral turpitude. Following hearings, the local committee found that the crime of which petitioner had been convicted involved moral turpitude and unanimously recommended that petitioner be disbarred, and the Board, adopting the findings of the local committee, unanimously recommended disbarment.

The evidence in the record is in the main undisputed and we deem it unnecessary to set forth the material facts in any great detail. Beginning in 1968 petitioner suffered a series of personal tragedies, became emotionally depressed and endured a marked deterioration in his physical and mental health. There was evidence that his psychotic depression developed into a manic depression. As a result he was forced to close his law office in June 1970. He resumed his law practice in March 1972, but a course of irresponsible behavior soon involved him in personal and financial difficulties.

In July 1972 he committed the offense of which he was convicted and criminal charges were brought. During the next year and a half he was hospitalized for psychiatric treatment and evaluation. Finally on March 6, 1974, in the still pending criminal case against him, he pleaded guilty to a count charging him with a violation of Penal Code section 272 and two other counts were dismissed. After the conviction and granting of probation, he continued to receive treatment at various hospitals and general psychiatric and other therapy. The record reflects various medical opinions as to the nature and extent of petitioner's mental condition during all of this period. There is evidence to the effect that petitioner recovered from his depression in February 1975 and that under prescribed therapy there is a high probability that he will avoid further periods of mania or depression.

Petitioner contends that the crime of which he was convicted did not in its commission involve moral turpitude. It is petitioner's burden to

show that the Board's finding of moral turpitude is not supported by the evidence (*In re Higbie* (1972) 6 Cal.3d 562, 569 [99 Cal.Rptr. 865, 493 P.2d 97]), but the question is one of law ultimately to be determined by this court. (*Id.; In re Alkow* (1966) 64 Cal.2d 838, 840 [51 Cal.Rptr. 912, 415 P.2d 800, 21 A.L.R.3d 882]; *Grove* v. *State Bar* (1965) 63 Cal.2d 312, 315 [46 Cal.Rptr. 513, 405 P.2d 553].) We apply the concept of moral turpitude set forth in several of our recent decisions. (*In re Fahey* (1973) 8 Cal.3d 842, 849 [106 Cal.Rptr. 313, 505 P.2d 1369, 63 A.L.R.3d 465]; *In re Higbie, supra,* 6 Cal.3d 562, 569-570.)

We first note that prior to his first hearing before the local administrative committee, petitioner stipulated with the examiner for the State Bar that his "conduct and actions leading to his conviction . . . did in fact involve moral turpitude." The use of stipulations is authorized and encouraged by rule 34.1 of the Rules of Procedure of the State Bar (now rule 27.10). They obviate the necessity of formal proof and are conclusive as to the truth of the facts contained therein unless the local committee or the Board relieves a party of their effect. (Rule 34.1, Rules Proc. of State Bar, now rule 27.20; *Spindell* v. *State Bar* (1975) 13 Cal.3d 253, 260-261, and fn. 5 [118 Cal.Rptr. 480, 530 P.2d 168].) Petitioner has not requested or obtained such relief and is therefore bound by his admission. Nonetheless, we need not rest our determination of the issue of moral turpitude on the basis of petitioner's stipulation as our independent review of the elements of his conviction compels us to conclude that petitioner's crime involved moral turpitude.

█ "Conviction of some crimes establishes moral turpitude on its face. These include crimes that necessarily involve an intent to defraud or intentional dishonesty for the purpose of personal gain. (*In re Hallinan* [1954] 43 Cal.2d 243, 247-248 [272 P.2d 768].) They may also include particular crimes that are extremely repugnant to accepted moral standards such as murder (*In re Rothrock* [1940] 16 Cal.2d 449, 454 [106 P.2d 907, 131 A.L.R. 226] (dictum)) or serious sexual offenses (*In re Boyd* [1957] 48 Cal.2d 69 [307 P.2d 625])." (*In re Fahey, supra,* 8 Cal.3d 842, 849.) █ We do not hold that the offense of contributing to the delinquency of a minor as proscribed by Penal Code section 272 is one involving moral turpitude *per se.* Rather, we conclude that under the facts of this case, the offense of which petitioner was convicted on his plea of guilty involved as a matter of law a crime of moral turpitude. Without setting forth the unfortunate details, it is enough for us to say that the offense to which petitioner pleaded guilty evidences the

commission of a reprehensible crime, offensive to every conception of morality.

■ "In bar discipline proceedings under section 6101 of the Business and Professions Code, the respondent's conviction of an offense stands as conclusive proof that the accused committed all acts necessary to constitute the offense." (*In re Higbie, supra,* 6 Cal.3d 562, 570.) ■ Since petitioner's offense establishes moral turpitude on its face and since his conviction conclusively proves that he committed the elements of that offense, he may not, as he has attempted to do, argue that the particular circumstances of his crime did not involve moral turpitude.

■ Petitioner contends alternatively that disbarment as recommended by the Board would be excessive discipline in view of the factors of mitigation which he alleges were involved in his offense. In particular, he refers to evidence which indicates that he was suffering from mental illness during the period in which he committed his crime. ■ While it is our ultimate responsibility to determine the degree of discipline to be imposed, the Board's recommendation is given great weight and petitioner has the burden of demonstrating that the recommendation is erroneous or unlawful. (*In re Kreamer* (1975) 14 Cal.3d 524, 531 [121 Cal.Rptr. 600, 535 P.2d 728]; *Yokozeki* v. *State Bar* (1974) 11 Cal.3d 436, 450 [113 Cal.Rptr. 602, 521 P.2d 858].)

■ We have heretofore noted that "[i]f an attorney commits acts of moral turpitude or other professional misconduct, the fact that his acts stem from psychiatric difficulties is no reason to refrain from disciplining him." (*In re Fahey, supra,* 8 Cal.3d 842, 850, fn. 4.) "In this area our duty lies in the assurance that the public will be protected in the performance of the high duties of the attorney rather than in an analysis of the reasons for his delinquency. Our primary concern must be the fulfillment of proper professional standards, whatever the unfortunate cause, emotional or otherwise, for the attorney's failure to do so." (*Grove* v. *State Bar* (1967) 66 Cal.2d 680, 685 [58 Cal.Rptr. 564, 427 P.2d 164].)

■ Petitioner agrees that this court's primary concern should be the protection of the public from unsuitable practitioners. He argues, however, that his misconduct was largely the product of his mental illness and for that reason protection of the public only requires that he be precluded from practicing law until his mental health has been restored. He urges that appropriate discipline would be to suspend him until he affirmatively demonstrates to the State Bar by means of

psychiatric evidence that he is mentally and emotionally capable of practicing law. One may sympathize with petitioner in his recognition of his psychiatric problems. Nonetheless, we discern a number of factors in petitioner's case which lead us to believe that the form of discipline that he recommends is not an appropriate means of assuring that he will not practice law until fully capable of doing so without danger to the public or his clients.

We first note that in the absence of mitigating circumstances the reprehensible nature of petitioner's offense would warrant severe discipline. (See *In re Boyd, supra,* 48 Cal.2d 69.) Without going beyond the facts of the charge to which he pleaded guilty, "it is enough to say that such conduct is unworthy of a member of the legal profession." (*Id.,* at p. 70.) The seriousness of petitioner's offense is augmented by the fact that he became involved with the victim of his crime while ostensibly in the course of his duties as an attorney representing a client. While his crime may have been in part the product of his mental condition, our paramount duty is to protect the public and we are not satisfied that in the light of all the circumstances of this case and taking into consideration petitioner's prior disciplinary offenses (see fn. 1, *ante*), this objective can be achieved unless petitioner is required to undergo the evaluation process of a proceeding for reinstatement before he is again permitted to practice law.[3] We conclude that the recommendation of the Board should be followed and that disbarment is the appropriate discipline to be imposed. In view of this conclusion, it is unnecessary for us to consider further herein the proceedings in L.A. No. 30473.

In L.A. No. 30549, it is ordered that petitioner be disbarred from the practice of law in this state and that his name be stricken from the roll of attorneys. In L.A. No. 30473, it is ordered that the proceedings be dismissed without prejudice to further proceedings should petitioner hereafter seek reinstatement. It is also ordered that petitioner comply with rule 955 of the California Rules of Court and that he perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, after the effective date of this order. This order is effective 30 days after the filing of this opinion.

On August 11, 1976, the opinion was modified to read as printed above.

---

[3] Without intimating any opinion on petitioner's entitlement to reinstatement, we observe that rule 45.30, Rules of Procedure of the State Bar, provides that a petition for reinstatement may be filed upon the expiration of five years after the date of interim suspension and that "Upon application and good cause shown, the board, in its discretion, may shorten the time for filing the petition to a time less than five years but not less than two years . . . ."