[No. S007685. Nov. 2, 1989.]

LYNN ARTHUR PINEDA, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

Lynn Arthur Pineda, in pro. per., for Petitioner.

Diane C. Yu, Truitt A. Richey, Jr., and Major Williams, Jr., for Respondent.

**OPINION**

**THE COURT.**—The State Bar issued a notice to show cause charging petitioner Lynn Arthur Pineda with abandoning his clients, misrepresenting the status of their cases, and misappropriating their funds. The parties agreed to a stipulation of facts and discipline which recommended that Pineda ·be placed on probation for five years and be actually suspended during the first year of his probation. We informed Pineda that we were considering more severe discipline, and he petitioned for review, arguing that the recommended discipline was appropriate. As will appear, we disagree and conclude that he should be placed on probation for five years on the condition that he be actually suspended for two years.

## I. *Facts*

Pineda was admitted to the practice of law in California in 1974. The stipulation reveals that between 1978 and 1986 Pineda violated his oath as an attorney and the Rules of Professional Conduct in seven separate matters. ■ Pineda initially contends that he agreed to some of the

factual allegations in the stipulation only because of the recommended discipline and that some of the allegations are untrue. In considering increased discipline we may relieve an attorney of the stipulation's legal conclusions, but he remains bound by its factual recitals. (*Inniss* v. *State Bar* (1978) 20 Cal.3d 552, 555 [143 Cal.Rptr. 408, 573 P.2d 852].)

## THE AKINSANYA MATTER

In March 1984 Grace Akinsanya retained Pineda to represent her in a real estate matter and gave him $1,500 as an advance fee. By May 1984 Akinsanya became dissatisfied with Pineda's inaction and asked him to agree to a substitution of attorney. However, he refused to sign a substitution of attorney form, despite the intervention of Akinsanya's new attorney, and failed to return Akinsanya's files or refund any part of the advance fee. Only after the superior court sanctioned him for his actions did he either withdraw from the case or turn over the file.

## THE ROBINSON MATTER

Vesta Robinson hired Pineda to enforce a judgment in a personnel action against the United States Army and gave him $500 as an advance fee. Afterwards Robinson tried to contact Pineda for over a year and a half, but he refused to return her telephone calls or to take any action on her case. On those occasions when Robinson personally visited Pineda to discuss her case, he falsely represented that he was working on the matter. He also sent a false letter to the Department of the Army, in which he claimed that he had had "innumerable contacts" with the department. As a result of his inaction, Robinson ultimately lost the chance to prosecute her claim and obtained a recovery of the advance fee only after suing Pineda in small claims court.

## THE MENZA-FLORES MATTER

In November 1978 Pineda represented Jose Menza and Cecilia Flores in a personal injury action. Pineda settled the claim and paid them their portion of the settlement. However, he withheld some of the settlement proceeds to satisfy a lien for medical services and subsequently misappropriated the funds for his own use.

## THE SATERFIELD MATTER

In June 1983 Patricia Saterfield hired Pineda to represent her in a marital dissolution action and paid him $310 as an advance fee. Saterfield called Pineda for the next nine months, yet he refused to communicate with her. In frustration, she hired another attorney and requested a substitution. Pineda did not sign the substitution, and failed to communicate with the new attorney, to return the file, or to refund the advance fee.

## THE GLOVER MATTER

Pineda repeated his indifferent conduct in Charles Glover's marital dissolution proceeding. Glover hired Pineda, paid him $800 as an advance fee, and gave him a $2,200 property lien to cover the remaining balance. He did not hear from Pineda again. Although Glover tried to contact him many times over several months, Pineda failed to return Glover's calls, did not perform the services for which he was retained, and refused to refund the advance fee.

## THE ANTRUM MATTER

In February 1986 Zanette Antrum went to Pineda's office and left a $100 deposit to secure an appointment to discuss an unlawful detainer action. Antrum subsequently tried to schedule an appointment, but Pineda refused to meet with her or to return her deposit.

## THE PALMER MATTER

In early 1983 Pineda agreed to represent Joyce Palmer in an employment discrimination case, received an advance fee of $130 and filed a complaint in propria persona on her behalf in the United States District Court. Thereafter he did not perform any work on the case, and it was dismissed for want of prosecution. When Palmer inquired about the case Pineda informed her that he was too busy to handle the matter, but he did not refund the advance fee.

## II. *Discussion*

Pineda's sole contention is that the recommended discipline of five years' probation with one year of actual suspension is appropriate. He insists that the State Bar's disciplinary recommendation is entitled to great

weight, claiming that the hearing panel and review department are better suited to find the relevant facts and apply the rules of law. Moreover, he argues that if we have any doubts regarding the appropriate degree of discipline we should resolve them in his favor.

■ These contentions mischaracterize the role of the State Bar in recommending disciplinary sanctions and the appropriate standard of review. While we indeed attach great weight to disciplinary recommendations of the review department, we are ultimately responsible for independently determining the appropriate degree of discipline. (*Smith* v. *State Bar* (1985) 38 Cal.3d 525, 539 [213 Cal.Rptr. 236, 698 P.2d 139].) If we are persuaded that the recommended discipline is unduly lenient we will not hesitate to impose more severe sanctions than those recommended in a stipulation. (*Giovanazzi* v. *State Bar* (1980) 28 Cal.3d 465, 472 [169 Cal.Rptr. 581, 619 P.2d 1005].)[1]

■ Here the stipulated facts reveal a common pattern: Pineda accepted fees from clients, failed to perform the services for which he was retained, refused to communicate with his clients or respond to their inquiries, and did not refund any advance fees. ■ Having decided that he did not intend to represent his clients, Pineda should have promptly communicated that fact to them, returned their files, and refunded any unearned portion of the advance fee. (*Carter* v. *State Bar* (1988) 44 Cal.3d 1091, 1098 [245 Cal.Rptr. 628, 751 P.2d 894].) By failing to take such action Pineda abandoned his clients in violation of his oath as an attorney (Bus. & Prof. Code, §§ 6068,[2] 6103[3]) and the good faith and fiduciary duty that binds an

---

[1] In imposing more severe discipline in this case we need not resolve any doubts in Pineda's favor; that standard applies only to conflicts in the evidence and there is no such conflict here. (See *Spindell* v. *State* Bar (1975) 13 Cal.3d 253, 259 [118 Cal.Rptr. 480, 530 P.2d 168, 80 A.L.R.3d 1231] ["In reweighing the *evidence* and passing upon its sufficiency, we resolve all reasonable doubts in favor of the accused" (italics added)].)

[2] Section 6068 declares in relevant part: "It is the duty of an attorney to do all of the following:

"⋯

"(d) To employ, for the purposes of maintaining the causes confided to him or her such means only as are consistent with truth, and never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law.

"⋯

"(m) To respond promptly to reasonable status inquiries of clients and to keep clients reasonably informed of significant developments in matters with regard to which the attorney has agreed to provide legal services.

"⋯

"(o) To report to the agency charged with attorney discipline, in writing, within 30 days of the time the attorney has knowledge of any of the following:

"⋯

"(3) The imposition of any judicial sanctions against the attorney . . . ."

[3] Section 6103 states, inter alia, "Any violation of the oath taken by [an attorney], or of his duties as such attorney, constitute causes for disbarment or suspension."

attorney to the most conscientious fidelity to his client's interest. (*Doyle* v. *State Bar* (1976) 15 Cal.3d 973, 978 [126 Cal.Rptr. 801, 544 P.2d 937]; see also Rules Prof. Conduct, former rules 2-111,[4] 6-101(A)(2).[5])

■ Our independent review of the record convinces us that the recommended discipline of one year's actual suspension does not adequately reflect Pineda's wilful disregard of his clients' interests. The recommended discipline is clearly insufficient in light of Pineda's multiple acts of wrongdoing. (*Arden* v. *State Bar* (1987) 43 Cal.3d 713, 728 [239 Cal.Rptr. 68, 739 P.2d 1236] [increased discipline is justified in cases in which an attorney has demonstrated a " 'continuing course of serious professional misconduct extending over a period of several years' "].)

■■■ Misappropriation of client funds by itself is a gross violation of an attorney's professional oath (*Tenner* v. *State Bar* (1980) 28 Cal.3d 202, 206 [168 Cal.Rptr. 333, 617 P.2d 486]; Rules Prof. Conduct, rule 8-101(A)(2))[6] and generally merits an actual suspension of at least one year. (Rules Proc. of State Bar, div. V, Stds. for Atty. Sanctions for Prof. Misconduct, std. 2.2(a).) Similarly, an attorney who repeatedly accepts compensation for legal services and then abandons his clients without communicating with them may be suspended from the practice of law for at least one year. (See, e.g., *Davis* v. *State Bar* (1983) 33 Cal.3d 231 [188 Cal.Rptr. 441, 655 P.2d 1276]; *Gassman* v. *State Bar* (1976) 18 Cal.3d 125, 131-132 [132 Cal.Rptr. 675, 553 P.2d 1147]; *Nizinski* v. *State Bar* (1975) 14 Cal.3d 587 [121 Cal.Rptr. 824, 536 P.2d 72]; see also Bus. & Prof. Code, § 6106.)[7] If such disregard becomes habitual and is combined with misrepresentations to a client, the attorney may be disbarred. (*Carter* v. *State Bar, supra,* 44

---

[4] Rule 2-111 (A) provided in relevant part: "(2) . . . a member of the State Bar shall not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including giving due notice to his client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled, and complying with applicable laws and rules. [¶] (3) A member of the State Bar who withdraws from employment shall refund promptly any part of a fee paid in advance that has not been earned." (New Rules of Professional Conduct became operative on May 27, 1989; all further rule references are to the former rules.)

[5] Rule 6-101(A) (2) stated, "A member of the State Bar shall not intentionally or with reckless disregard or repeatedly fail to perform legal services competently."

[6] Rule 8-101 prescribed, inter alia, "(B) A member of the State Bar shall:
". . . . . . . . . . . . . . . .
"(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the member of the State Bar which the client is entitled to receive."

[7] Section 6106 directs in pertinent part that "The commission of any act involving moral turpitude, dishonesty or corruption, whether the act is committed in the course of his relations as an attorney or otherwise, and whether the act is a felony or misdemeanor or not, constitutes a cause for disbarment or suspension."

Cal.3d 1091, 1100; *Grove* v. *State Bar* (1967) 66 Cal.2d 680, 684 [58 Cal.Rptr. 564, 427 P.2d 164].)

 Thus it is apparent from a review of our cases that an attorney, like Pineda, who has embarked on a course of conduct in which breaches of his professional responsibilities become commonplace should receive a more severe sanction than an actual suspension of one year. Consistently with those decisions, we would be justified in disbarring Pineda for his wrongful conduct. However, a review of the mitigating circumstances in this matter persuades us that a longer actual suspension, combined with a period of supervised probation, will adequately protect the public, the legal profession, and the courts without unduly punishing the petitioner. (See *In re Severo* (1986) 41 Cal.3d 493, 500 [224 Cal.Rptr. 106, 714 P.2d 1244].)

A number of mitigating factors in this record militate against the extreme sanction of disbarment. First and most important, Pineda has cooperated with the State Bar throughout the disciplinary proceedings and has shown a willingness to accept punishment, as evidenced by his decision to stipulate to the relevant facts and forego a potentially meritorious defense to some of the charges. (*Levin* v. *State Bar* (1989) 47 Cal.3d 1140, 1148-1149 [255 Cal.Rptr. 422, 767 P.2d 689]; *Doyle* v. *State Bar, supra,* 15 Cal.3d at p. 979.) Second, by his conduct subsequent to the initiation of the proceedings— such as the reforms he has undertaken in the management of his practice— Pineda has demonstrated remorse for his wrongful conduct and a determination to rehabilitate himself. (*Schultz* v. *State Bar* (1975) 15 Cal.3d 799, 804 [126 Cal.Rptr. 232, 543 P.2d 600].) Finally, we recognize that some of Pineda's wrongful conduct occurred during a period of personal and professional problems that culminated in the dissolution of his marriage. (*In re Cadwell* (1975) 15 Cal.3d 762, 772 [125 Cal.Rptr. 889, 543 P.2d 257]; *Doyle* v. *State Bar, supra,* 15 Cal.3d at p. 979.)

We conclude that the discipline recommended in the stipulation is not commensurate with the gravity of the underlying misconduct, but we do not believe that Pineda should be disbarred. Instead we order that petitioner Lynn Arthur Pineda be suspended from the practice of law in California for a period of five years, that execution of the order of suspension be stayed and that he be placed on probation for the period of five years upon the following conditions:

(1) Petitioner shall be actually suspended from the practice of law in the State of California for the first two years of the probationary period.

(2) During the remainder of his probation, he shall comply with the provisions of the State Bar Act, the Rules of Professional Conduct of the

State Bar of California, and the additional conditions of probation set forth in the stipulation.

(3) Before returning to the practice of law petitioner shall be required to refund to his clients the unearned fees listed in the stipulation with interest at the statutory rate.

(4) During the period of his actual suspension from the practice of law, petitioner shall take and pass the Professional Responsibility Examination given by the National Conference of Bar Examiners.

(5) Petitioner shall comply with rule 955 of the California Rules of Court and perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days respectively, after the effective date of this order. (See Bus. & Prof. Code, § 6126, subd. (c).)

This order is effective on the finality of this decision in this court. (See Cal. Rules of Court, rule 24(a).)