[L. A. No. 16511. In Bank.—June 23, 1938.]

MARTIN E. GEIBEL, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

[L. A. No. 16510. In Bank.—June 23, 1938.]

CHARLES R. MORFOOT, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

[L. A. No. 16502. In Bank.—June 23, 1938.]

WALTER FRANK SHELLEY, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Joseph L. Lewinson and Morris E. Cohn for Petitioner in L. A. No. 16511.

Charles R. Morfoot, *in pro. per.*, and Franklin P. Bull for Petitioner in L. A. No. 16510.

Walter Frank Shelley, *in pro. per.*, and Charles E. McGinnis for Petitioner in L. A. No. 16502.

Philbrick McCoy for Respondent.

THE COURT.—Petitioners seek a review of recommendations of The State Bar suspending them from practice. The Board of Governors recommended that Geibel be suspended for three years, and Morfoot and Shelley for one year. The charge against petitioners is that they aided and abetted two unlicensed persons, J. J. Driscoll and Anita Le Bourgeois, to practice law and aided and abetted said persons in the collection of fees for maintaining vexatious and malicious litigation. Each of petitioners had been admitted to practice for more than twenty-five years.

The amended order to show cause lists five suits alleged to have been maliciously and vexatiously instituted in the United

States District Court for the Southern District of California, Central Division, at Los Angeles:

(1) *Elt B. Fowler Estate, Ltd.,* v. *Kneeben et al.,* No. 401–J;

(2) *Elt B. Fowler Estate, Ltd.,* v. *McDuffie et al.,* No. 541–J;

(3) *Fowler and Geibel* v. *Seymour,* No. 825–Y;

(4) *Holmgreen Estate, Ltd.,* v. *Bank of America et al.,* No. 512–H;

(5) *Gross Estate, Ltd.,* v. *Title Insurance and Trust Co.,* No. 514–J.

These suits were filed between September 18, 1934, and January 30, 1936. All were dismissed before trial.

 Petitioners contend that this court lacks jurisdiction to discipline them for the reason that the charges involve their conduct in federal court actions, and the federal court has instituted no proceedings against them. In *Barton* v. *State Bar,* 213 Cal. 186 [2 Pac. (2d) 149], an attorney was suspended for six months for his conduct in a federal bankruptcy proceeding. He did not object to the jurisdiction of the state court to suspend him. The federal court thereafter suspended him for a like period on the record of his suspension by the state court. (*In re Barton,* 54 Fed. (2d) 810.) In the federal court he contended that the state court lacked jurisdiction to suspend him for his conduct in federal court matters. The federal court held that the record of suspension in the state court did "not intrinsically disclose any such infirmity as would warrant the court in refusing to follow the order of suspension".

If an attorney admitted to practice in the courts of this state commits acts in reference to federal court litigation which reflect on his integrity and fitness to enjoy the rights and privileges of an attorney in the state courts, proceedings may be taken against him in the state court. (*People* v. *Green,* 9 Colo. 506 [13 Pac. 514, 524]; *State* v. *Grover,* 47 Wash. 39 [91 Pac. 564]; *In re Lamb,* 105 App. Div. 462 [94 N. Y. Supp. 331]; *Re Sherwood,* 259 Pa. 254 [103 Atl. 42, L. R. A. 1918D, 447]; *Selling* v. *Radford,* 243 U. S. 46 [37 Sup. Ct. 377, 61 L. Ed. 585, Ann. Cas. 1917D, 569]; 5 Am. Jur. 433; 7 C. J. S., sec. 18a, p. 730.)

Petitioners rely on our decision in the case of *In re McCue,* 211 Cal. 57 [293 Pac. 47]. In that case The State Bar op-

posed the application of McCue, a Montana attorney, to be admitted in this state, on the ground that he had been practicing law in this state without a license since coming from Montana. With regard to McCue's admitted practice in the federal courts in this state, we said that said courts are governed by their own rules of admission, and the state does not place any restrictions upon the persons who may appear before the federal courts within this state. Upon coming to California McCue had been admitted to practice in the Federal District Court, Northern District of California, by virtue of his admission in Montana, in accordance with the rules for admission then in effect in said federal court. His activities in the federal court, therefore, were lawful and did not afford grounds for denying his application to practice in the state courts. Said decision does not support the contention of petitioners herein.

It further contended that the proceeding herein must be dismissed for a violation of rule 26 of the Rules of Procedure of the State Bar. (213 Cal. cxxviii.) Said rule provides as follows: " . . . No continuance shall be for a longer period than thirty (30) days, nor for periods aggregating more than ninety (90) days, without the approval of the president or a vice-president, or a member of the Board resident in the district in which the proceeding is pending." Hearings were held on seven different dates between March 27, 1936, and December 18, 1936. The total period of continuances was approximately 265 days. Continuances between the hearing of March 27, 1936, and the hearing of May 15, 1936, were for 48 days, and the continuances between hearings of May 15, 1936, and October 9, 1936, for 147 days. In only one instance was approval obtained as provided by rule 26. The continuances for all except twenty-one days of the 147-day period were due to petitioner Morfoot's inability to be present on account of a broken leg. A continuance from May 22d to May 29th was due to Geibel's absence, and a continuance from September 25th to October 9th, to absence of his attorney in Mexico. In three instances a short continuance was granted because a *quorum* of the committee was not present on the date set.

It is unfortunate that the hearings extended over so long a period. But the postponements were due largely to inability or failure of one or the other of petitioners, or their coun-

sel, to be present on dates set. Approval of continuances should have been obtained under rule 26. But the failure to comply with this procedural requirement does not render the proceeding void, nor require dismissal of the charges.

The plaintiff in each of the five actions listed in the order to show cause is described as a "benevolent trust estate, organized under citizenship, common law rights of contract, constitution, federal laws and immunities vouchsafed to all persons, as provided in and by the Constitution of the United States of America". These "estates" were described by petitioners as common law or Massachusetts trusts. The instrument creating each of said trusts, except the Holmgreen Estate, Ltd., was drawn by J. J. Driscoll and Anita Le Bourgeois, referred to throughout the proceedings as Madame Le Bourgeois. Said persons were not licensed as attorneys in the state or federal courts in this state. All or some of these declarations of trust, as well as others prepared by Driscoll and Madame Le Bourgeois, were recorded in Arizona. It does not appear that said instruments were entitled to be recorded there. There is no suggestion that the trusts in any case involved Arizona lands. The instruments generally gave as the principal place of business of the trust estate an address which was shown in the proceedings herein to be that of the "All Car Rapid Auto Wash" in Phoenix, Arizona. By arrangement with the owner, cards had been tacked to the wall of a shack on the premises to the effect that the location was the general headquarters of two trust estates other than those listed in the order to show cause. The declaration of trust creating the Holmgreen "benevolent trust" was drawn by petitioner Geibel.

The instruments creating the trusts listed in the charges do not appear in full in the record, but there appears the declaration establishing the Fowler Trust Estate, Ltd. (Not to be confused with the Elt B. Fowler Estate, Ltd.) Since the trust instruments were admittedly similar in important particulars, consideration of the Fowler Estate declaration is important as bearing on the intent and purposes of Driscoll and Madame Le Bourgeois, whose illegal practices petitioners are found to have aided. Under said instrument, Arch K. Fowler and Maud M. Fowler, "conveyors", transferred their property, real and personal, including their household furnishings, to themselves as trustees, for the benefit of themselves as

beneficiaries. The trust was to continue for twenty-one years and automatically renew itself every twenty-one years "during the life and existence of the Constitution of the United States". Upon the death either of Arch Fowler or Maud Fowler, a named relative was to become trustee and beneficiary. The instrument indicates a purpose to place the property of the Fowlers beyond reach of their creditors and to avoid probate upon their deaths.

It does not appear that this trust was involved in litigation. In most instances concerning which there is evidence in the record the trusts were organized with the object of commencing litigation. Trust instruments were recorded in Arizona on the theory that thereby the trust estate would have an existence as a nonresident entity to bring suit in the federal courts in California against California residents. They led some of the laymen with whom they came in contact to believe at first that they were attorneys licensed in this state and, later, that they were licensed to practice elsewhere. After their names in the Los Angeles directory for 1936 appeared the designation "lawyer".

It was the litigation commenced in the name of the Elt B. Fowler Estate, Ltd., which led to the filing of charges against petitioners with The State Bar by Russell B. Seymour, trustee in bankruptcy of the Estate of Frazier McIntosh, and Thomas S. Tobin, attorney for said trustee. Frazier McIntosh, or Seymour, as trustee of his estate, was a defendant in said litigation. Following service on Seymour of an amended complaint in action 541–J, Seymour procured an examination to be held in the bankruptcy matter to ascertain the nature of the claim of the Elt B. Fowler Estate, Ltd., in property to which Frazier McIntosh had asserted ownership. Shortly after said examination, held under section 21a of the Bankruptcy Act (U. S. C. A., sec. 44 (a) ), the complaint was filed against petitioners.

According to petitioners, the purpose of the three suits prosecuted in the name of the Elt B. Fowler Estate, Ltd., was to recover possession of oil lands. Certain stockholders in the Stockholders Petroleum Corporation, Ltd., formerly Deuel Petroleum Corporation, purchased at tax sales the interest of the owner-lessor (Amy Kneeben) in lands upon which the Stockholders Petroleum Corporation, Ltd., held an oil lease. The purchase was made in the name of Elt B.

Fowler, acting for said stockholders. Thereafter in an action to quiet title brought in the name of Fowler in the Superior Court of Los Angeles County, judgment was entered holding the tax sales void as to two of the lots for insufficiency in the description in the assessment. The sale of the third lot was held void also on the ground that the assessor improperly included a portion of the lot which had been conveyed to the city of Venice. The judgment quieted title in defendant Amy Kneeben. In a separate judgment previously entered in said action, and not appealed from, it was determined in favor of Amy Kneeben upon her cross-complaint that Frazier McIntosh had no interest in the land.

This state court action was commenced on September 25, 1931. Judgment in favor of Kneeben as against Fowler was entered in October, 1933. Elt B. Fowler died, and the stockholders for whom he was acting were substituted as plaintiffs. Attorney J. B. Joujon-Roche, who had tried the action, took an appeal. No suggestion is made that Mr. Joujon-Roche was in anywise connected with the alleged vexatious and malicious federal court litigation. The District Court of Appeal reversed the judgment of the superior court as to lots 5 and 6, block 6, Silver Strand tract, holding that the tax sale had not been shown to be void. As to the third lot— lot 1, block 6—the judgment was affirmed. (*Mallman* v. *Kneeben*, 11 Cal. App. (2d) 484 [54 Pac. (2d) 46].)

If Mrs. Kneeben's title was superior to that of McIntosh, as held in the trial court, and if Mrs. Kneeben had no ground to attack the title of Fowler except that rejected by the District Court of Appeal, then it would seem to follow that Elt B. Fowler, as trustee for the stockholders whom he was representing, had a good title to lots 5 and 6. But it does not appear that any steps were taken in the superior court upon the going down of the *remittitur* to obtain entry of judgment quieting plaintiff's title either against Kneeben or McIntosh.

While the appeal in the state court action was pending, two of the federal court suits (401–J and 541–J) involving the Fowler tax title were filed. The third federal court action (825–Y) was commenced on January 30, 1936, shortly after the decision on appeal in the state court.

The group of stockholders of the Stockholders Petroleum Corporation, Ltd., for whom Elt B. Fowler had purchased tax titles, had been holding occasional meetings. In the sum-

mer of 1934, while the appeal in the state court action was pending, Arch K. Fowler, brother of Elt B. Fowler, introduced J. J. Driscoll and Madame Le Bourgeois to them. At the suggestion of Driscoll and Madame Le Bourgeois, the Elt B. Fowler Trust Estate, Ltd., a "benevolent trust", was created, with A. K. Fowler, Mrs. B. M. Sipes, and petitioner Geibel as trustees. The members of this group of stockholders then transferred their stock to the trust. Although not clearly shown, it is to be inferred that the tax titles to the Silver Strand tract lots were also transferred to the trustees.

Thereafter the three federal court actions were brought by the Elt B. Fowler, Estate, Ltd., and the trustees thereof. In action 401–J Geibel appeared as attorney of record on the original complaint and the first amended complaint, and Geibel and petitioner Morfoot as attorneys on the second amended complaint. In action 541–J, petitioner Shelley appeared as attorney on the original complaint, petitioner Morfoot on the amended complaint. Petitioner Geibel appeared as attorney of record in the last action, 825–Y.

The complaint in action 401–J prays for a decree quieting title and for restitution of possession of real and personal property, for an accounting of the proceeds of two oil wells on certain lots, and for "liquidated" damages in the sum of $25,000,000 against 145 defendants, including the attorney-general of the state of California, the corporation commissioner, a number of the major oil companies, and four Los Angeles banks. It is also asked that the plaintiffs themselves be appointed receivers of the property pending trial.

The first amended complaint reduced the number of defendants to 113, while the second amended complaint named 38 defendants. The defendants include persons who were defendants in the state court action and others. The amended complaints made only minor changes in the original. The action related to the Silver Strand tract lots which were the subject of the appeal pending in the state District Court of Appeal and also to numerous "oil and gas lease rights" in Los Angeles, Santa Barbara and Orange County lands. It is to be inferred that the Elt B. Fowler Estate, Ltd., had succeeded to whatever title Elt B. Fowler had by virtue of his purchase of the Silver Strand tract lots at the tax sale for the benefit of approximately twenty of the stockholders of the Stockholders Petroleum Corporation. But as between the Elt

B. Fowler trust estate, on the one hand, and the Stockholders Petroleum Corporation, Ltd., on the other, the "oil and gas lease rights were the property of the Stockholders Petroleum Corporation". Geibel admitted that they had never been transferred to the Elt B. Fowler Estate, Ltd.

The committee found that said complaint was a "hodge-podge of irrelevant and meaningless expressions" and in part "incoherent and unintelligible". · It alleges that the defendants are illegally holding possession of real and personal property of plaintiffs, "in violation of the constitutional citizenship and property rights of the complainants herein, without due process of law", and that "defendants and each of them, have and are continually violating the constitutional citizenship and property rights, and also the constitutional · privileges and immunities of the complainants herein, without due process of law. . . . " Charges of fraud are made without any indication of the nature of the fraud. The complaint refers to the action in the state court, then pending on appeal in the state District Court of Appeal, with the statement that the Superior Court of Los Angeles County had unconstitutionally set aside tax deeds.

The memorandum of points and authorities is a mass of generalities, including extensive quotation from the Constitution of the United States, and citation of such land marks of constitutional law as *Marbury* v. *Madison,* 1 Cranch. 177 [2 L. Ed. 60], and *Munn* v. *Illinois,* 94 U. S. 113, 134 [24 L. Ed. 77]. Petitioner Geibel's name appears as attorney of record on the original complaint and the first amended complaint, while Geibel and Morfoot appear on the second amended complaint.

After the filing of the complaint and first amended complaint in action 401–J, action 541–J was filed in the federal court with petitioner Shelley as attorney of record on the original complaint, and petitioner Morfoot on the amended complaint. The committee found this complaint also to be a hodge-podge of meaningless expressions. It sought relief similar to that prayed for in action 401–J, with reference to the Silver Strand tract lot. It likewise prayed for damages in the sum of $25,000,000. The reason for filing a second action does not appear.

Action 401–J was dismissed by order of Judge James on motions filed by Russell B. Seymour, trustee in bankruptcy

of the estate of Frazier McIntosh, and by others. Attorneys Geibel and Morfoot were both present at the hearing of the motion. Action 541–J was also dismissed by Judge James.

On January 30, 1936, the third Fowler quiet title suit was filed in the federal court. It also related to the Silver Strand tract lots. Petitioner Geibel appeared as attorney of record on this complaint. A motion to dismiss was heard by Judge Yankwich and granted. On the same date on which he filed the third quiet title suit, Geibel filed a motion to set aside the dismissal in action 401–J, without any notice of hearing thereon. Seymour caused the motion to be placed on the calendar for February 17, 1936. Geibel procured a continuance. Thereafter he filed an affidavit for a further continuance on the ground that he "had not had time to make the proper service on the other defendants other than the defendants that set the motion for hearing". However, there was already on file an affidavit of Geibel's secretary to the effect that acting under the direction of Geibel she had served duplicate copies of the petition to vacate the dismissal upon all the attorneys representing the defendants. The motion to vacate the dismissal was denied.

In addition to the above litigation in which the Elt B. Fowler Trust Estate, Ltd., was plaintiff, the committee made findings with reference to two other federal court actions listed in the order to show cause—*Holmgreen Estate, Ltd.*, v. *Bank of America*, 512–H, and *Gross Estate, Ltd.*, v. *Title Insurance and Trust Co.*, 514–J. Geibel appeared as attorney of record in the Holmgreen case, while Shelley appeared as attorney on the complaint filed in the Gross case. Morfoot was substituted for Shelley, and later Geibel was substituted for Morfoot.

It also appeared from the evidence that four other actions besides those listed in the order to show cause were filed in the federal court with a benevolent trust estate, or the trustees thereof, as plaintiffs. Shelley filed the complaints in three of these other actions. The fourth was filed by one Jaynes *in propria persona* on stationery of "Morfoot and Sutton".

The committee found that complaints in each of the five actions listed in the order to show cause were filed by one or the other of petitioners "in collaboration" with Driscoll and Madame Le Bourgeois, unlicensed persons. The evidence sustains the finding as to four of the actions. In the

fifth, the Holmgreen case, Geibel testified that he drew the instrument creating the benevolent trust for a client of his who did not come to him through Driscoll or Madame Le Bourgeois, and that he acted entirely without their collaboration. The conclusion is inescapable that the complaints in the other four cases and the memorandum of points and authorities which accompanied them were prepared by Driscoll and Madame Le Bourgeois and signed by one of petitioners for filing. It is contended that the work done by said unlicensed persons in connection with the case is analogous to that which may be done lawfully by an unlicensed law clerk. We cannot accede to this contention. Driscoll and Madame Le Bourgeois performed services of a legal nature as principal actors, rather than in a subservient position under licensed attorneys.

Petitioner Geibel testified that he filed the original complaint in action 401–J, one of the three Fowler suits, under the impression that petitioner Shelley had prepared it; that "he took it for granted that Shelley knew how to prepare a pleading", and for that reason he did not go over the complaint in detail. The most cursory reading of said complaint would reveal its insufficiencies. Shelley denied that he had prepared said complaint. Furthermore, Geibel thereafter filed the amended complaint in said action, and with petitioner Morfoot filed the second amended complaint, which differ from the original only in minor respects. He also filed the complaint in action 825–Y, and the motion to vacate the dismissal in action 401–J, and took an active part in court appearances in said actions.

The position of Geibel is anomalous. He was vice-president and legal adviser of the Stockholders Petroleum Corporation, Ltd., which held leases on the Silver Strand tract lots and other property. A minority of the stockholders of said corporation purchased the interest of the owner-lessor in the Silver Strand tract lots at tax sale, in the name of Elt B. Fowler. The delinquent taxes for which the property was sold were a lien thereon before execution of the leases held by the corporation. A valid tax sale would, therefore, pass title to the purchaser free and clear of the subsequent lease in the usual case. The Stockholders Petroleum Corporation, Ltd., was a defendant in the state court action brought by Elt B. Fowler to quiet his title against the claim

of said corporation and other defendants. Said corporation was also a party defendant in action 401–J in the federal court. Geibel, vice-president and legal adviser of the corporation, became one of the trustees of the Elt B. Fowler Trust Estate, Ltd., formed by this minority group of stockholders, and as attorney of record for this trust estate, he filed the action against the Stockholders Petroleum Corporation, Ltd., of which he was vice-president and legal adviser. He contends that the interests of the minority group were not adverse to that of the corporation, apparently for the reason that the minority group, if successful in recovering possession of the oil lands, intended to recognize the lease rights of the corporation, according to Geibel. But that the interests were adverse was recognized by Geibel himself, for he testified that he refused to sign the contracts by which Driscoll and Madame Le Bourgeois were employed as managers of the trust estate for the reason that he represented the corporation as vice-president and legal adviser.

The committee found that petitioners aided and abetted Driscoll and Madame Le Bourgeois ''in the collection of fees for maintaining vexatious and malicious litigation''. Petitioners object that there is no evidence that any fees for legal services were paid to said unlicensed persons. They had agreed that the sum of $200 a month provided for in the contract employing them as managers should not be paid to them until the property was recovered and income producing. But, under the guise of needing funds for expenses of the litigation, including funds with which to pay the attorneys of record, they received from the Fowler Trust Estate, Ltd., more than $4,000, raised through voluntary contributions, and retained a large part of said sum. The demands for expense money were frequent and insistent. Petitioner Geibel claims that he did not receive any fees for his services, while Shelley and Morfoot received only small sums. The only reasonable inference is that Driscoll and Madame Le Bourgeois were collecting and retaining funds. The fact that petitioners may not have known what sums Driscoll and Madame Le Bourgeois were receiving does not exonerate them from discipline for their conduct, which was censurable in other respects.

Petitioners Shelley and Morfoot had no connection with the affairs of the Stockholders Petroleum Corporation, Ltd.,

nor with the Elt B. Fowler Estate, Ltd., until they were requested by Driscoll to act as attorneys of record in suits brought by the estate. Shelley withdrew from the litigation upon the suggestion of Judge James of the federal court, who informed Shelley, according to Shelley's testimony, that he did not like the appearance of these cases brought by "benevolent trust estates". Shelley further testified that he was under the impression that Madame Le Bourgeois and Driscoll were attorneys. His testimony in this respect is unconvincing. Petitioner Morfoot was not the original attorney in any of the cases. He claims to have accepted substitutions in reliance on the integrity and ability of the attorneys by whom the actions were originally filed.

Petitioners attack the finding that the federal court actions were "baseless" and "maliciously and vexatiously brought". They point to the fact that the District Court of Appeal, in *Mallman* v. *Kneeben, supra,* reversed the judgment of the trial court against the members of the Fowler group, as to lots 5 and 6, block 6, of the Silver Strand tract. Action 401–J concerns rights of the Fowler Estate in a number of other properties not involved in the state court action, as to which there is no evidence whatsoever of any *bona fide* claim in said trust estate. The Stockholders Petroleum Corporation held or had held leases on certain of the properties, which admittedly had never been transferred to the trust estate, in which said estate had no interest whatsoever. In fact, Geibel, as attorney of record, subsequently brought an action on behalf of the Stockholders Petroleum Corporation to establish its interest in said lands.

The complaints failed to state grounds of jurisdiction in the federal courts. Diversity of citizenship does not appear. There is no suggestion that the trustees of the trust resided elsewhere than in California. Nor is there a sufficient statement of any federal constitutional question. The complaint contains general references to the taking of property without due process of law and to unconstitutionality of certain statutes. But, under the rule that federal jurisdiction must affirmatively appear, the general references are entirely insufficient.

As to the Fowler suits, the chief purpose would seem to have been to adjudicate conflicting claims of the Fowler Estate and Frazier McIntosh and the trustee in bankruptcy of

his estate. The judgment of the District Court of Appeal in the state court actions indicates a *bona fide* claim in the trust estate as to certain of the Silver Strand tract lots. But the nature of the controversy between the trust estate and Mc-Intosh does not appear; nor does it appear that said controversy, whatever its nature, involved a federal question.

The findings emphasize the harassing effect of the actions on the defendants therein. The actions were objectionable from another point of view. The evidence indicates that the members of the Fowler group were simple laymen in humble circumstances. That they believed in good faith that a fraud had been perpetrated on them is apparent. They made repeated contributions demanded by Driscoll and Madame Le Bourgeois, supposedly to finance the litigation. Those who could not give more made contributions as low as $1. Mrs. Sipes, one of the trustees, and her husband, paid in more than $3,000, partly borrowed. Doubts raised in the minds of members of the group by the repeated dismissals of actions were quieted with the assurance by Driscoll and Madame Le Bourgeois that the final outcome would be successful. Petitioner Geibel attended a number of meetings of the group, at which Driscoll and Madame Le Bourgeois gave purported explanations of what was being accomplished. Any merits which claims of the trust estate may have had as to any of the lands have been prejudiced by this unfortunate litigation.

It is ordered that the petitioner, Martin E. Geibel be and he hereby is suspended from the practice of the law in this state for a period of one year; and that the petitioners, Charles R. Morfoot and Walter Frank Shelley, be and each of them is hereby suspended from the practice of the law in this state for a period of ninety days, effective thirty days from the filing of this order.

Rehearing denied.