[S.F. No. 22960. In Bank. Mar. 28, 1973.]

DAVID MOOHR GLICKMAN, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

Michael Lewton for Petitioner.

F. LaMar Forshee and Herbert M. Rosenthal for Respondent.

**OPINION**

**THE COURT.**—This is a proceeding to review a recommendation of the Disciplinary Board of the State Bar of California that petitioner be suspended from the practice of law for a period of one year.

*Facts:* Between the years 1961 and 1964, petitioner represented Allan W. Parker as an attorney. They also became social friends and saw each other on occasions other than those involving legal matters. Petitioner was actively engaged in various real estate ventures, in which he appeared to be doing well financially.

In mid-1963, petitioner was negotiating to acquire an apartment building located at 355 Fulton Street in San Francisco. He needed an additional $10,000 to make the down payment, and he offered to sell Parker for $15,000 a half interest in three lots in the 900 block on Clayton Street in San Francisco, $10,000 to be paid in cash and the remaining $5,000 at a later time. (There appears to have been an understanding that the $5,000 could be paid out of the proceeds of a later sale of the property.) It was anticipated that a building of two flats would be constructed on each of the three lots and that petitioner would put up any necessary funds and arrange for the financing, but that upon a sale the parties were to share equally. Petitioner represented to Parker that the lots were worth $45,000 or $50,000 and that they were unencumbered.

Parker did not have funds on hand to make the $10,000 payment, but he arranged to have his home refinanced, thus raising the necessary amount. The refinancing was completed at the title company on August 23, 1963. At the time of the closing of the escrow, petitioner suggested that Parker authorize the funds to be paid by the title company directly to him. Parker agreed and directed the title company to pay petitioner $10,000. The title company, at petitioner's direction, transferred the $10,000 to the escrow covering petitioner's purchase of the Fulton Street property.

In connection with his purchase of the Fulton Street property, petitioner took out a first loan in the amount of $245,000 and executed a $60,000 promissory note, payable to the sellers, secured by a second deed of trust on the Fulton Street property, which deed of trust also covered the Clayton Street lots as additional security.

In a written answer filed by petitioner herein, he alleges that Parker understood very well that he was selling him a half interest in the Clayton Street project so that he himself could buy the Fulton Street property, and that it would be necessary to use the Clayton Street lots as partial security for the $60,000 second loan on the Fulton Street property. He further alleges that he explained to Parker that he anticipated removing the $60,000 encumbrance after he had remodeled and refinanced the Fulton Street property.

Parker emphatically denied that petitioner had represented that the Clayton Street lots would be encumbered in connection with petitioner's purchase of the Fulton Street property and, on the contrary, testified that petitioner had assured him on several occasions that the lots were unencumbered and would remain unencumbered until petitioner and Parker needed financing to build the three sets of flats and would not be encumbered with-

out agreement on the part of both joint venturers. The local administrative committee believed Parker and found accordingly.

On August 24, 1963, the day after petitioner received the $10,000, he gave Parker a quit claim deed for an undivided half interest in the Clayton Street lots. The deed was not acknowledged.[1] A few days later, on August 28, 1963, the deed of trust securing the $60,000 note was recorded, and the escrow for the sale of the Fulton Street property to petitioner was closed. At Parker's request, petitioner acknowledged the quit claim deed some time in October 1963, but it was not recorded until January 13, 1964. Parker testified that he relied on petitioner's advice that it was not necessary to record the deed.

Some time in 1964, there was a foreclosure under the second deed of trust, as a result of which Parker lost his interest in the lots and the joint venture. Parker employed an attorney to represent him in a claim against petitioner, and on November 17, 1964, petitioner executed a $15,000 note in Parker's favor. No payment was made thereunder, and on December 11, 1964, a stipulated judgment in that amount was entered against petitioner in favor of Parker in an action on the note in the San Francisco Superior Court. No evidence has been presented herein that any part of said judgment was ever paid. On Parker's complaint, the present proceedings were thereafter commenced.

At the conclusion of the hearing, the local administrative committee adopted findings of fact, which, with certain modifications, were subsequently adopted by the disciplinary board.[2] Both the local administrative

---

[1]Petitioner says that the quit claim deed was given to Parker only so that he would have something in writing to evidence his interest and that it was intended that a written agreement with respect to the joint venture would be prepared and executed at a later time. A copy of an agreement detailing the terms of the joint venture, signed by petitioner and his wife, apparently executed in September 1963, was introduced in evidence by respondent; and Parker admitted in his testimony that he had executed a copy, which he returned to petitioner.

[2]The findings of fact and conclusion, as modified by the disciplinary board, read, as follows:

"FINDINGS OF FACT

"COUNT ONE

"I.

"Between the years 1961 and 1964 [petitioner] represented Allan W. Parker as an attorney at law.

"II.

"During 1963 [petitioner] offered the said Allan W. Parker a one-half interest in a joint venture to develop three lots located in the 900 block of Clayton Street in the City and County of San Francisco, by constructing duplexes thereon.

"III.

"Thereafter [petitioner] entered into an agreement with the said Allan W. Parker

committee and the disciplinary board recommended that petitioner be suspended from the practice of law for a period of one year.

pursuant to which Allan W. Parker was to pay the sum of $15,000 to [petitioner] in exchange for a one-half interest in the aforesaid lots, $10,000 to be paid immediately and $5,000 at a later date. Prior to and at the time said agreement was made and thereafter [petitioner] represented to the said Allan W. Parker that the lots which were the subject of the agreement were unencumbered and that they would not be encumbered without the agreement on the part of both joint venturers.

"IV.

"Pursuant to the aforesaid understanding the said Allan W. Parker deposited the sum of $10,000 in cash to [petitioner's] account at Northwestern Title Company of San Francisco on or about August 23, 1963.

"V.

"On August 23, 1963, in consideration of the payment of the sum of $10,000 cash to [petitioner], [petitioner] executed and delivered a quit claim deed dated August 24, 1963, to one-half interest in the aforementioned lots to the said Allan W. Parker. Said deed was not acknowledged until October 22, 1963, and was not recorded until January 13, 1964. Parker testified he relied on the advice of [petitioner] that this was not necessary.

"VI.

"In contravention to his agreement with the said Allan W. Parker [petitioner], immediately after August 23, 1963, and prior to October 22, 1963, encumbered the real property the subject of this agreement by executing a deed of trust for a total sum of $60,000, using said lots as partial security for said loan. [Petitioner] failed to advise Allan W. Parker of the fact of this encumbrance.

"VII.

"[Petitioner] failed to make payments pursuant to the terms of the $60,000 indebtedness. As a result the lots used for security were foreclosed upon and sold. As a consequence Allan W. Parker lost his interest in and the security of the lots, lost his interest in the joint venture, and lost the sum of $10,000 cash paid to [petitioner] as set forth above.

"VIII.

"[Petitioner] by his conduct and representations and failure to make known to Allan W. Parker his intention to encumber said lots deceived the said Allan W. Parker in that the said Allan W. Parker did not receive a one-half interest in three unencumbered lots by reason of the quit claim deed given by [petitioner]. [Petitioner] intended by his conduct to deceive the said Allan W. Parker and intended to encumber said lots prior to the recording of the quit claim deed given the said Allan W. Parker to evidence his interest in the joint venture real estate transaction. [Petitioner] defeated the interest of Allan W. Parker by his actions and intentionally deceived the said Allan W. Parker in order to induce him to pay over to [petitioner] the sum of $10,000 cash.

"CONCLUSION

"From the foregoing findings of fact the committee concludes that [petitioner] did violate the provisions of section 6106 of Article 6 of the Business and Professions Code of the State of California and that he did violate his oath and duties as an attorney and counsellor at law within the meaning of Section 6103 of Article 6 of the Business and Professions Code of the State of California and did commit acts involving moral turpitude within the meaning of section 6106 of Article 6 of the Business and Professions Code of the State of California."

In an information filed in the San Francisco Superior Court, petitioner was charged, on Parker's complaint, with a violation of section 487 of the Penal Code (grand theft); but he was found not guilty.

*Questions:* First. *Is there sufficient support in the record for the findings of fact?*

*Yes.* It is clear from the evidence hereinabove recited that there is ample evidence to support the findings of fact; and petitioner does not question the sufficiency of the evidence to sustain the findings.

Second. *Is the degree of discipline recommended appropriate?*

In this court's opinion, the findings herein, which, as hereinabove shown, are supported by the evidence, warrant the imposition of more severe discipline than that recommended by the local administrative committee and the disciplinary board.

This court is not bound by the findings or recommendation of the local administrative committee or the disciplinary board, but has the power to weigh and pass upon the sufficiency of the evidence, to determine if the recommended discipline is appropriate, and, if justified, to impose more severe discipline than recommended. (*Sturr* v. *State Bar,* 52 Cal.2d 125, 127 [338 P.2d 897].)

From the findings, it is apparent that petitioner abused the trust and confidence placed in him by his client to gain a monetary advantage for himself and that he was guilty of moral turpitude and deserves more severe discipline than a one-year suspension.

It is ordered that petitioner be suspended from the practice of law for a period of five years. Execution of such suspension is stayed for the period of five years, during which period he is placed on probation upon the following conditions: that he is suspended for the first year and that he refund to Allan W. Parker the sum of $10,000 within said year, and if he does not make said payment (and furnish satisfactory evidence to the State Bar), the one-year period of suspension be extended until said payment is made (and satisfactory evidence thereof furnished to the State Bar) but in no event to exceed five years. This order is effective 30 days after the filing of this opinion.