[L.A. No. 30194. In Bank. May 6, 1974.]

DAVID T. YOKOZEKI, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

Garry, Dreyfus, McTernan & Brotsky and Benjamin Dreyfus for Petitioner.

Herbert M. Rosenthal and Ronald W. Stovitz for Respondent.

**OPINION**

**THE COURT.**—This is a proceeding to review a recommendation of the Disciplinary Board of the State Bar (Board) that petitioner, a member of the State Bar, be disbarred from the further practice of law. The Board's recommendation is based on findings by a local administrative committee of the State Bar that petitioner converted to his own use an apartment building

and a note secured by a trust deed on the residence of a client, contrary to the purposes for which these assets had been transferred from the client to petitioner.[1] Although the committee's findings were adopted in substance by the Board, its recommendation of disbarment is harsher than the committee's recommendation that petitioner be suspended from the practice of law for a five-year period.

Petitioner contends that: (1) the evidence is insufficient to support the findings; (2) he was denied a reasonable opportunity to present his case before the Board; (3) he was prejudiced by his former client's seven-year delay in the filing of the complaint with the State Bar and thereafter by the tardiness of the State Bar in processing the complaint, and (4) disbarment is an inappropriate sanction under the circumstances.

We reject the first three of these contentions. We decline, however, to follow the Board's recommendation of disbarment. Instead, we order that petitioner make restitution to his former client and that he be suspended from the practice of law for five years or until he has made full restitution, whichever is the greater period.

Petitioner was admitted to practice in California in 1952. He has no prior record of discipline. In early 1962 Dr. Chang Ha Kim consulted petitioner in connection with a medical malpractice suit which possibly exposed the client to personal liability beyond any insurance coverage. Petitioner accepted a $2,000 retainer, filed pleadings in a separate declaratory relief action,[2] and suggested that Kim protect his assets by transferring the same to To-Yo, Incorporated, a corporation controlled by petitioner, to be held pending the outcome of the malpractice suit. Kim and petitioner agreed to the transfers and in order to give the transaction the appearance of propriety Kim was to receive from To-Yo, in exchange for his assets, certain film rights which both he and petitioner knew were worthless.

---

[1] Petitioner, by his conduct, is alleged to have violated his oath (Bus. & Prof. Code, § 6067) and duties (§ 6068) as an attorney and counselor at law. Such conduct would constitute cause for disbarment or suspension (§ 6103). Specifically, he is charged with wilfully violating rule 4 of the Rules of Professional Conduct and the commission of acts involving moral turpitude and dishonesty. Rule 4 provides that "A member of the State Bar shall not acquire an interest adverse to a client." A wilful breach of the rule subjects a member of the State Bar to reproval or suspension for a period not to exceed three years. (§ 6077.) The commission of acts involving moral turpitude or dishonesty subjects a member to suspension or disbarment. (§ 6106.)

Unless otherwise specified, all statutory references are to sections of the Business and Professions Code.

[2] Kim's purported insurer had filed a complaint for declaratory relief, alleging that Kim was not covered against the malpractice claim. Kim was represented by attorneys other than petitioner in the malpractice action.

Accordingly, on February 12, 1963, Kim conveyed to the corporation his interest in an apartment building and delivered a promissory note in the amount of $65,000, which note was secured by a deed of trust to Kim's personal residence. Petitioner, on behalf of the corporation, executed a separate writing which contained a promise to return the real estate and the note secured by the deed of trust to Kim on an unspecified date in 1963.

In early 1963 petitioner, without Kim's knowledge or consent, caused To-Yo to execute and deliver to the Bank of Tokyo a deed of trust to Kim's apartment building and an assignment of the note and deed of trust to Kim's residential property. The documents were delivered to the bank in order to secure pre-existing notes on which the corporation and petitioner were obligated.

In early 1964 the Bank of Tokyo attempted to collect the note and threatened to foreclose on Kim's home. Kim confronted petitioner who requested additional time to "clear the matter up." After petitioner failed to act, Kim consulted another attorney who demanded an explanation from petitioner. Petitioner then acknowledged that he had assigned Kim's note and its security, and had delivered a deed of trust to the apartment building as collateral for bank loans to the financially distressed To-Yo. Petitioner promised to repay the loans to the bank and did in fact discharge part of the obligation, resulting in the retransfer of the interest in the apartment building to Kim late in 1964. However, petitioner failed to liquidate his remaining obligations or to induce the bank to return Kim's note and reconvey the deed of trust to Kim's home.

Kim sued petitioner and the Bank of Tokyo in early 1965 demanding cancellation of the note and reconveyance of the deed of trust securing the note. Kim's verified complaint alleged that petitioner had fraudulently induced him to transfer the properties and note by falsely promising to return them.

Petitioner filed an unverified answer denying the allegations of the complaint. Discovery proceeded through 1966. In 1968 Kim settled his differences with the bank whereby he paid the bank $14,000 in exchange for the return of the note and the reconveyance of the security interest to him.

Petitioner discontinued the practice of law in California and moved to Japan in October 1969. Two months later, in December, a default judgment in the amount of $14,000 was entered in favor of Kim against petitioner. The judgment has not been satisfied.

Petitioner failed to appear or submit any testimony at hearings scheduled

by the local administrative committee. Explanations of his conduct are gleaned from an affirmative defense asserted in his answer to the complaint and from his other communications to the State Bar. He claimed that there was no attorney-client relationship between him and Kim in connection with the transactions involving Kim's assets; that other attorneys represented Kim in the malpractice suit; that the transfer of assets was made pursuant to an investment by Kim in the To-Yo Corporation; and that Kim consented to the subsequent assignments for security purposes to the Bank of Tokyo. Petitioner was unclear as to the nature of the consideration received by Kim for this "investment." In his answer petitioner claimed that Kim was to receive film rights of a value equal to the value of the interests transferred to To-Yo. In one letter petitioner claimed that Kim was to receive a portion of the profits of the enterprise and at a later time asserted that Kim was given an assignment of film rights. Petitioner claimed that the venture failed due to a breach of a distribution agreement on the part of a third party and other defaults not attributable to him.

Petitioner conceded that he held some of Kim's assets until the malpractice suit was settled but claimed that the properties thus involved were certain contractual rights to purchase tracts of desert lands. According to petitioner these assets were transferred to him, were held only upon the request of Kim without any charge or fee, and were retransferred upon Kim's request.

The committee made and the Board adopted findings that petitioner had misappropriated the deed to the apartment house, the note and the deed of trust covering Kim's personal residence.[3]

### Sufficiency of Evidence

■ Petitioner initially contends that the evidence was insufficient to support the findings. Although we are not bound by the findings of the State Bar and must exercise our independent judgment on the weight and sufficiency of the evidence (*Glickman* v. *State Bar* (1973) 9 Cal.3d 179, 184 [107 Cal.Rptr. 65, 507 P.2d 953]; *In re Fahey* (1973) 8 Cal.3d 842, 845 [106 Cal.Rptr. 313, 505 P.2d 1369]; *Bernstein* v. *State Bar* (1972) 6 Cal. 3d 909, 916 [101 Cal.Rptr. 369, 495 P.2d 1289]), the findings nevertheless are entitled to great weight and petitioner has the burden of showing,

---

[3]Findings are made which are consistent with the account of events set out in the text. In conclusion the committee found: "That [petitioner] converted the apartment building and the Trust Deed upon the residence of Dr. Kim to his own use and purposes contrary to the agreement between [petitioner] and Dr. Kim, and used said properties for his own purposes by transferring said properties to the Bank of Tokyo to secure a pre-existing indebtedness. . . ."

in support of his contention, that they are not supported by substantial evidence (*Schullman* v. *State Bar* (1973) 10 Cal.3d 526, 529 [111 Cal.Rptr. 161, 516 P.2d 865]; *In re Wright* (1973) 10 Cal.3d 374, 377 [110 Cal.Rptr. 348, 515 P.2d 292]; *In re Higbie* (1972) 6 Cal.3d 562, 569 [99 Cal.Rptr. 865, 493 P.2d 97]). Petitioner fails to sustain this burden.

The record amply demonstrates petitioner misused the properties entrusted to him. Kim's testimony, particularly with respect to petitioner's proposal to hold Kim's properties until the malpractice suit was settled and also with respect to petitioner's guilty knowledge of the impropriety of the transfers to the bank, was corroborated by other witnesses. Additionally, the whole course of improper conduct is well demonstrated by documentary evidence. Petitioner's explanations, on the other hand, are implausible. His assertion that there was no attorney-client relationship between him and Dr. Kim when the transfers occurred is contradicted by the $2,000 check from Kim to petitioner "for retainer in the malpractice action" as well as by petitioner's signature as the attorney of record on the pleadings in the declaratory relief action. Petitioner's contention that the transfer of assets represented nothing more than an investment in the To-Yo Corporation is undermined by his conflicting explanations of Kim's participation as an investor. Petitioner's claim that Kim consented to the transfers of the properties to the Bank of Tokyo is rebutted by evidence relating to transactions in which the bank was involved.

Finally, petitioner appeared to be unwilling to have his credibility tested. He made no statement under oath in the civil suit against him commenced by Kim and suffered a default judgment rather than proceeding to trial. Although findings in a civil fraud suit are not binding on us in this proceeding (*In re Wright, supra,* 10 Cal.3d 374, 377), we can take judicial notice of matters in a civil action which arise out of a course of conduct underlying the charges against an attorney in disbarment proceedings (*Lee* v. *State Bar* (1970) 2 Cal.3d 927, 941 [88 Cal.Rptr. 361, 472 P.2d 449]; see *Eschwig* v. *State Bar* (1969) 1 Cal.3d 8, 18 [81 Cal.Rptr. 352, 459 P.2d 904, 35 A.L.R.3d 662]). We note also that petitioner did not testify or subject himself to cross-examination in these proceedings.

It is manifest for the foregoing reasons that petitioner's attack on the sufficiency of the evidence is without merit and we adopt the findings of the committee. Although it is our duty to resolve all reasonable doubts in favor of an accused member of the bar in deciding whether a particular course of conduct involves moral turpitude (*In re Fahey, supra,* 8 Cal.3d 842, 845-846), we are compelled to conclude on the findings that

petitioner's acts do involve moral turpitude and constitute a violation of his oath and duties as an attorney. (See fn. 1, *supra*.)[4]

### Opportunity to Defend

Petitioner next contends that he was denied a reasonable opportunity to defend against the complaint. He now requests a hearing de novo or, alternatively, an opportunity to present additional evidence since he was not present nor represented by counsel at hearings scheduled by the committee. It appears, however, that petitioner did not avail himself of generous opportunities to prepare his defense, obtain counsel, and appear at the scheduled hearings. He is, accordingly, not entitled to relief.

Kim's complaint of unprofessional conduct was filed in June 1970. After a preliminary investigation a formal notice to show cause was served on petitioner in Tokyo on December 25, 1971. Hearing was set for March 22, 1972, so as to afford time for discovery proceedings. Petitioner filed a formal answer in early January 1972 and stated that he would be unable to attend the hearing in California because of the expense involved as well as his desire to fulfill commitments to do legal work in the South Pacific area and Japan.[5] Petitioner also requested an opportunity to take the deposition in Tokyo of a loan officer of the Bank of Tokyo. Accordingly, the hearing was continued to May 25, 1972.

On May 25, 1972, petitioner was still not ready to proceed as he had not completed his discovery. The committee decided that the procedure

---

[4]Even if we were to find in accordance with petitioner's explanations he would still be subject to disciplinary action. If we assume that Kim's transfers were in the nature of an investment in To-Yo, petitioner did not reveal the corporation's shaky financial status nor give Kim any written evidence of his investment. All business dealings between an attorney and client in which the attorney benefits are closely scrutinized for unfairness on the attorney's part (*Eschwig* v. *State Bar*, *supra*, 1 Cal.3d 8, 16; *Magee* v. *State Bar* (1962) 58 Cal.2d 423, 430-431 [24 Cal.Rptr. 839, 374 P.2d 807]) and attorneys have been disciplined for inducing clients to invest in enterprises without fully apprising them of the risks. (See *Himmel* v. *State Bar* (1973) 9 Cal.3d 16, 22-23 [106 Cal.Rptr. 638, 506 P.2d 1014]; *Clancy* v. *State Bar* (1969) 71 Cal.2d 140, 148-151 [77 Cal.Rptr. 657, 454 P.2d 329]; *Krieger* v. *State Bar* (1954) 43 Cal.2d 604, 610-611 [275 P.2d 459].)

Furthermore, petitioner acknowledged that he held some of Kim's properties in trust "until the medical malpractice action was settled." Thus, by his own admission, petitioner participated in a scheme to defraud Kim's potential judgment creditors, which is a crime (Pen. Code, § 531), and a proper subject for disciplinary action (see *Townsend* v. *State Bar* (1948) 32 Cal.2d 592, 597-598 [197 P.2d 326]).

[5]Petitioner evidently was carrying out an extensive practice in the South Pacific. He claims to be a member of the firm of Crain, Rathbun & Shoecraft, the "oldest and most prestigious law firm in Guam and in the Trust Territory Islands of the Pacific" as well as "chief counsel" for many "international conglomerate firms."

previously approved was too cumbersome and time consuming.[6] It referred the matter to another committee to formulate a more expeditious procedure. It was finally proposed that petitioner be sent a list of the names of adverse witnesses, that he prepare cross-examination questions for each witness on the list, and that such questions be propounded to the witnesses immediately after they completed their testimony on direct examination. Petitioner objected to this procedure since it forced him to prepare questions for cross-examination without prior knowledge of the witnesses' testimony on direct examination. The committee, however, approved this procedure at a meeting on August 21, 1972, and advised petitioner to obtain counsel to represent him at the formal evidentiary hearing which was set for November 2, 1972.

Although the State Bar promptly mailed a record of these proceedings to petitioner, he did not learn of these developments until early October since he had moved from Japan to Guam in July without notifying the State Bar of his new address. In late October he requested a continuance of the hearing stating that he had been unable to reach the attorney of his choice, Mr. William J. Bluestein.[7] On November 2, 1972, the hearing was continued to February 26, 1973, to give petitioner an opportunity to obtain counsel and prepare. On November 9, 1972, the transcript of the proceedings of November 2 was mailed to petitioner along with a letter informing him that he was to retain counsel and be prepared for the hearing before February 26, 1973.

Petitioner was additionally warned that the hearing would proceed on February 26 whether or not he had arranged to be represented by counsel. Since Bluestein had told the State Bar that he was not petitioner's counsel and would *not* represent petitioner until a satisfactory fee arrangement had been negotiated, the November 9 letter of the State Bar also requested petitioner to inform the State Bar of the name of his attorney as soon as he was retained.

Although petitioner negotiated with Bluestein for a fee arrangement, he did not promptly forward the necessary funds to secure Bluestein's services. On January 4, 1973, Bluestein wrote petitioner asking for a $500 retainer and requesting an immediate reply so he would be able to

---

[6]The previous arrangement was for the State Bar to present its witnesses on direct examination and then send a transcript of the hearing to petitioner. Petitioner would next compose questions for cross-examination of these witnesses which would be sent to the State Bar to be propounded to the witnesses at a later hearing.

[7]Petitioner did not have Bluestein's correct address. The State Bar telephoned Bluestein for petitioner and advised the latter of the correct address of the attorney.

inform the State Bar whether or not he would be representing petitioner. On January 9 the State Bar wrote petitioner confirming the date of the February 26 hearing and again warning him that he was expected to have counsel ready by that date. On January 17 petitioner informed the State Bar that he had not yet employed counsel since he had not raised the funds for a retainer. Petitioner did not forward the required sum until February 20. Unfortunately, it did not reach Bluestein until the very date of the hearing at a time when it was too late to appear or to represent petitioner at the hearing. Although Bluestein called the offices of the State Bar on the date of the hearing, he was unable to contact the examiner who had already left to attend the hearing. Bluestein did not officially inform the State Bar that he represented petitioner until two days after the hearing had been completed.

The foregoing record discloses that petitioner had ample opportunity to prepare for the hearing. More than 14 months had expired from the time the notice to show cause had been served until the hearing was finally conducted. Petitioner was continually informed of the progress of the proceedings. Because he had repeatedly advised the State Bar that he would be unable to appear in person the committee had, in good faith, made reasonable efforts to afford him an opportunity to defend against the complaint under these difficult circumstances.

■ Proceedings before the State Bar are *sui generis,* neither civil nor criminal in character, and the ordinary criminal procedural safeguards do not apply. (*Lewis* v. *State Bar* (1973) 9 Cal.3d 704, 713-714 [108 Cal.Rptr. 821, 511 P.2d 1173]; *Bernstein* v. *State Bar, supra,* 6 Cal.3d 909, 916; *Eschwig* v. *State Bar, supra,* 1 Cal.3d 8, 18.) ■ A member of the State Bar has an obligation to appear at his disciplinary hearing and the hearing can properly proceed in his absence. (§ 6111; rule 32, Rules of Proc. of the State Bar; see *Alkow* v. *State Bar* (1971) 3 Cal.3d 924, 933-934 [92 Cal.Rptr. 278, 479 P.2d 638]; *Wilson* v. *State Bar* (1958) 50 Cal.2d 509, 510-511 [326 P.2d 849].) ■ A member of the bar has a duty to present any evidence he deems favorable to himself and a failure to do so may justify a denial of a motion for a rehearing for the purpose of presenting additional evidence. (*Barreiro* v. *State Bar* (1970) 2 Cal.3d 912, 925 [88 Cal.Rptr. 192, 471 P.2d 992]; see *Alkow* v. *State Bar, supra,* at pp. 933-934; *Wilson* v. *State Bar, supra,* at pp. 510-511; *In re Vaughan* (1922) 189 Cal. 491, 497-498 [209 P. 353, 24 A.L.R. 858].) ■ Finally, a member of the bar has a responsibility to obtain counsel if he wishes to be represented at a hearing. (See *Hyland* v. *State Bar* (1963) 59 Cal.2d 765, 773-774 [31 Cal.Rptr. 329, 382 P.2d 369].)

In light of the foregoing it is apparent that petitioner has no cause to complain of the procedures employed by the local committee. Although written submissions are no substitute for oral presentation (*Goldberg* v. *Kelly* (1970) 397 U.S. 254, 269 [25 L.Ed.2d 287, 299-300, 90 S.Ct. 1011]), and cross-examination without the opportunity to hear the witnesses on direct examination is not as effective as cross-examination with such an opportunity, such procedures were necessitated by petitioner's repeated refusal to comply with his obligation to appear in California for the hearing. The procedures were a bona fide effort by the committee to honor petitioner's wishes not to appear in person and to conduct the hearing by alternative means. The committee's refusal to conduct the hearing in all respects as requested by petitioner is immaterial. Petitioner at all times was afforded the opportunity to appear and to appear with or by counsel; his election not to do so constitutes a waiver of any claims of irregularity he now urges.[8]

The failure of petitioner to arrange to be represented by counsel at the hearing can be attributed only to his own defaults. Nearly six months elapsed from the time petitioner was told he should employ counsel until the time of the hearing in early 1973. Part of the delay was due to petitioner's failure to give his forwarding address to the State Bar and part was due to petitioner's lack of diligence in arranging for payment of the retainer fee.[9] His entire course of conduct in responding to the order to show cause reveals a lack of concern for the seriousness of the charges and a misunderstanding of the real priorities in the assignment of his time, effort and energies to the problems confronting him.

### Delay in Filing and Processing Complaint

Petitioner also urges that the complaint should be dismissed as he was prejudiced by the seven-year delay by Dr. Kim in filing the complaint and also by the delay of the State Bar in processing the complaint. Neither of these contentions has merit.

---

[8]Petitioner makes other contentions associated with his claim of the inadequacy of proceedings. He thus complains that he did not receive copies of certain documents, that hearsay evidence was improperly used, and that the examiner was guilty of prejudicial comments. Petitioner must be deemed to have waived such contentions by failure of timely objections. Moreover, we are persuaded by the record that no prejudice appears.

[9]There is no merit to petitioner's further argument that the State Bar, as a courtesy, should have contacted Bluestein just before beginning the hearing. At the time of the hearing, there was no attorney of record for petitioner. As previously indicated Bluestein for the first time informed the State Bar that he was representing petitioner two days *after* completion of the hearing.

■ Kim attempted at length to resolve his difficulties with petitioner through means other than complaining to the State Bar. The questioned transactions occurred in 1963; Kim negotiated with petitioner for return of his property in 1964; the civil suit was commenced by Kim in early 1965 and was not terminated until the end of 1969. Kim filed the complaint with the State Bar in the middle of 1970, only when it became apparent that petitioner was not going to pay the default judgment.

It is not unreasonable for a disgruntled client to attempt to resolve his differences with an attorney through a civil action before filing a complaint with the State Bar. (See *Eschwig* v. *State Bar, supra,* 1 Cal.3d 8, 14-15, fn. 6.) Petitioner failed to present any evidence in his defense in the civil action which involved the same course of conduct as in the case of the proceeding before the State Bar. Consequently, his claim that he was prejudiced by the deaths of three witnesses during the seven-year period before the filing of the complaint is entitled to little weight, and he has otherwise failed to demonstrate wherein any real prejudice lies.

■ There is no limitation period applicable to disciplinary proceedings before the State Bar; mere lapse of time is no defense unless *specific* prejudice is shown. (*Lewis* v. *State Bar, supra,* 9 Cal.3d 704, 713-714; *Arden* v. *State Bar* (1959) 52 Cal.2d 310, 316 [341 P.2d 6].)

■ ■ Petitioner also claims that the charges should be dismissed since the State Bar failed to comply with its own rules by tardiness in processing Kim's complaint.[10] However, the failure to adhere to its rules does not deprive the State Bar of jurisdiction (Rules of Proc. of the State Bar, rule 20(a)), and a dismissal of the complaint is not required without a showing of prejudice (*Vaughan* v. *State Bar* (1973) 9 Cal.3d 698, 702 [108 Cal.Rptr. 806, 511 P.2d 1158]). Far from being prejudiced by these delays, petitioner was benefited. Although not specifically requested by petitioner the delays were required in order for the State Bar to arrange for a trial of the issues in petitioner's absence, necessitated by petitioner's election not to appear in person at the hearing. (See *Geibel* v. *State Bar* (1938) 11 Cal.2d 412, 416-417 [79 P.2d 1073], cert. den. 305 U.S. 653 [83 L.Ed. 423, 59 S.Ct. 248], rehg. den. 305 U.S. 676 [83 L.Ed. 438, 59 S.Ct. 361].) As in the case of the claimed delay in filing the complaint, petitioner fails to make any real showing of prejudice.

---

[10]Petitioner specifically claims there was no authorization for the delay in excess of 225 days between the time of filing the complaint and the issuance of the notice to show cause (see Rules of Proc. of the State Bar, rule 21(a)) or for the hearings being continued for more than a total of 90 days. (See Rules of Proc. of the State Bar, rule 34.)

*Discipline*

Petitioner finally contends that disbarment is too severe a punishment under the circumstances. Although we have the final word as to the discipline to be imposed (*Glickman* v. *State Bar, supra,* 9 Cal.3d 179, 184), the recommendation of the Board is given great weight. (*Schullman* v. *State Bar, supra,* 10 Cal.3d 526, 540.) Petitioner has the burden of showing that the Board's recommendation is erroneous or unlawful. (*Persion* v. *State Bar* (1973) 9 Cal.3d 456, 461 [107 Cal.Rptr. 708, 509 P.2d 524]; *In re Plotner* (1971) 5 Cal.3d 714, 716 [97 Cal.Rptr. 193, 488 P.2d 385]; *Mack* v. *State Bar* (1970) 2 Cal.3d 440, 443 [85 Cal.Rptr. 625, 467 P.2d 225]; *Sturr* v. *State Bar* (1959) 52 Cal.2d 125, 127 [388 P.2d 897].)

 Misappropriation of a client's property is a gross violation of general morality likely to undermine public confidence in the legal profession and therefore merits severe punishment. (*Walter* v. *State Bar* (1970) 2 Cal. 3d 880, 891 [87 Cal.Rptr. 833, 471 P.2d 481]; *In re Urias* (1966) 65 Cal. 2d 258, 262 [53 Cal.Rptr. 881, 418 P.2d 849].) However, there are a number of mitigating factors in petitioner's case. He has no prior disciplinary record. (*Bradpiece* v. *State Bar* (1974) 10 Cal.3d 742, 747 [111 Cal.Rptr. 905, 518 P.2d 337]; *Mrakich* v. *State Bar* (1973) 8 Cal.3d 896, 907 [106 Cal.Rptr. 497, 506 P.2d 633]; *Bernstein* v. *State Bar, supra,* 6 Cal.3d 909, 918; *Himmel* v. *State Bar* (1971) 4 Cal.3d 786, 798 [94 Cal.Rptr. 825, 484 P.2d 993]; *Yapp* v. *State Bar* (1965) 62 Cal.2d 809, 818 [44 Cal.Rptr. 593, 402 P.2d 361]; *Burns* v. *State Bar* (1955) 45 Cal. 2d 296, 303 [288 P.2d 514].) He has successfully continued his practice, albeit outside of the State of California, after the transaction in question without additional charges being lodged against him, and apparently has the confidence of his colleagues in his current practice. (See *Bradpiece* v. *State Bar, supra,* 10 Cal.3d 742, 747; *Benson* v. *State Bar* (1971) 5 Cal. 3d 382, 388 [96 Cal.Rptr. 30, 486 P.2d 1230].) He has partially compensated his client for the loss by inducing the bank to release its claim on Kim's apartment building. Restitution of misappropriated property may be considered in setting the degree of discipline. (*Bradpiece* v. *State Bar, supra,* 10 Cal.3d 742, 748; *Benson* v. *State Bar, supra,* 5 Cal.3d 382, 388; *Yapp* v. *State Bar, supra,* 62 Cal.2d 809, 818; *Burns* v. *State Bar, supra,* 45 Cal.2d 296, 303; see *Egan* v. *State Bar* (1938) 10 Cal.2d 458, 461-462 [75 P.2d 67].) The delay in filing the complaint against petitioner may also be considered in mitigation of the punishment to be imposed. (See *Vaughan* v. *State Bar, supra,* 9 Cal.3d 698, 703; *Arden* v. *State Bar, supra,* 52 Cal.2d 310, 321.)

Present here are other factors which militate against leniency in petitioner's case. Petitioner appears unrepentant. This is evidenced not only by the fact that he has not made or offered to make full restitution to his client either to cover Kim's actual losses or to make payment of the $14,000 default judgment.

Further, he has failed to appreciate the seriousness of the charges in the instant proceeding or to comprehend the importance of participating in the disciplinary proceedings. Until recently,[11] petitioner has repeatedly declined to appear in California. The attitude of an attorney toward disciplinary hearings properly may be considered when deciding on the appropriate sanction. (*Grove* v. *State Bar* (1967) 66 Cal.2d 680, 684 [58 Cal.Rptr. 564, 427 P.2d 164]; see also *Bradpiece* v. *State Bar, supra,* 10 Cal.3d 742, 748; *Benson* v. *State Bar, supra,* 5 Cal.3d 382, 388.) Petitioner is also a member of the bars of Guam, Trust Territory of the Pacific, Okinawa and Japan, and he no longer practices in California. Since his practice has not been directly affected by these proceedings he apparently finds little incentive to take them seriously.

 In view of the totality of the foregoing matters, we order that petitioner make restitution to his former client and that he be suspended from the practice of law for five years or until he has made full restitution, whichever is the greater period. This order is effective 30 days after the filing of this opinion.

Petitioner's application for a rehearing was denied June 5, 1974.

---

[11]Petitioner first offered to come to California when presenting his motion for a hearing de novo, which was *after* the local committee had held its evidentiary hearing and made its findings.